UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**AIMEE BEVAN, as Personal Representative of the
Estate of DESIREE GONZALES, deceased,**

     **Plaintiff,**

v.              Case 1:15-cv-00073-CG-SCY

**SANTA FE COUNTY, MARK GALLEGOS, Deputy
Warden/Acting Youth Development Administrator, in his
official and individual capacities, GABRIEL VALENCIA,
Youth Development Administrator, individually,
MATTHEW EDMUNDS, Corrections Officer, individually,
JOHN ORTEGA, Corrections Officer, individually,
MOLLY ARCHULETA, Corrections Nurse, individually,
ST. VINCENT HOSPITAL, and
NATHAN PAUL UNKEFER, M.D.,**

     **Defendants.**

**DEFENDANT NATHAN PAUL UNKEFER, M.D.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON THE ISSUE OF PUNITIVE DAMAGES AND
SUPPORTING MEMORANDUM**

   **COMES NOW,** Defendant Nathan Paul Unkefer, M.D., by and through his attorneys of record, McClaugherty & Silver, P.C., and hereby moves pursuant to Fed. R. Civ. P. 56 for partial summary judgment as to Plaintiff's claim for punitive damages (the "Motion"). In accordance with D.N.M.LR-Civ. 7.1(a), Plaintiff's counsel was contacted regarding this Motion and opposes the relief requested herein.

        **I. INTRODUCTION**

   This case arises from the death of Desiree Gonzales on May 8, 2014. On the preceding day, Ms. Gonzales was found unconscious after overdosing on heroin, her second known overdose. *See* Exh. A, Police Reports. Her friend called "911". *Id.* Police officers arrived at approximately 7:28 p.m. (*Id.*), requested that medics expedite to the location, and emergency

1

medical responders arrived at approximately 7:34 p.m. (*see* Exh. B, EMT record). Emergency medical technicians administered Narcan/naloxone, first intra-nasally and then, when she did not initially improve, intravenously. Exh. B, EMT Record. The last dose of Narcan/naloxone was given at 7:44 p.m., after which EMS noted that she was awake and conversant. *Id*. She was transferred to St. Vincent Hospital by ambulance and was able to call her mother en route. *Id*.

After arriving at the St. Vincent Emergency Department, Ms. Gonzales was triaged. Exh. C, Deposition of Kerri Craddock, RN, 32:12-15, 33:1-3. During triage, Ms. Gonzales exhibited withdrawal symptoms, including vomiting and agitation. *Id*. 34:16-35:1, 49:14-18; *see also* Exh. D, Report of Don Fisher, M.D. (Plaintiff's Expert), p. 4. She indicated she did not want to be at the hospital and attempted to leave. Exh. C, Craddock Depo., 34:16-35:1, 49:14-50:9. Ms. Gonzales was evaluated by Dr. Unkefer, a board certified emergency room physician. Exh. E, ER Record. Dr. Unkefer ordered Zofran (an anti-nausea medication) and Ativan (an anti-anxiety medicine). Exh. F, Deposition of Nathan Unkefer, M.D., 84:12-24.

At no time in the emergency room did Ms. Gonzales exhibit signs or symptoms of respiratory distress. Exh. E, ER Record; *see also* Exh. G, Deposition of Robert Henry, M.D. (Plaintiff's expert), 54:22-55:1. She was at all times able to talk clearly with nursing staff, Dr. Unkefer, and her mother and was often on the phone. Exh. C, Craddock Depo., 32:16-20, Exh. H, Deposition of Ann Marie Munger, M.D., 51:24-52:4, 57:11-60:5. She had a steady gait and was alert and oriented. Exh. E, ER Record. At approximately 9:52, over two hours after the last dose of Narcan was administered, Ms. Gonzales was discharged. *Id*. At that time she had normal vital signs and continued to show no signs of respiratory distress. *Id*. She was discharged into the custody of a police officer with the City of Santa Fe Police Department who advised Dr. Unkefer that she would be taken to the County Juvenile Detention Facility where she would be

monitored and checked every 15 minutes. Exh. F, Unkefer Depo., 135:8-136:7. Dr. Unkefer had no further interactions with Ms. Gonzales or anyone pertaining to Ms. Gonzales until learning of her death. *Id*. 150:6-11.

Plaintiff filed her Complaint for Wrongful Death (the "Complaint) in the First Judicial District Court for the State of New Mexico on January 9, 2015. This matter was removed to the United States District Court, District of New Mexico, on January 28, 2015. *See* Plaintiff's Complaint, attached as Exhibit A to the Notice of Removal (Doc. 1). In the Complaint, Plaintiff alleges Dr. Unkefer was medically negligent by (1) by discharging Ms. Gonzales before she was an appropriate patient for discharge (*Id*. at ¶ 86); (2) failing to appropriately monitor Ms. Gonzales's condition (*Id*. at ¶ 86) (3) not providing SF YDC staff or the Santa Fe City Police with appropriate instructions regarding her monitoring (*Id*. at ¶ 87); and, failing to get informed consent from Ms. Gonzales or her mother for her discharge (*Id*. at ¶ 88). In the Complaint, Plaintiff further alleges that "[t]he care provided to Ms. Gonzales at St. Vincent Hospital was negligent, reckless, wanton or willful in that Ms. Gonzales's condition was known to the medical providers, her fragile state was clear and she was discharged. Such failures on the part of St. Vincent and Dr. Unkefer give rise to punitive damages." *Id*. at ¶ 98.

**II.     STATEMENT OF UNDISPUTED MATERIAL FACTS**

For the purposes of this Motion only, the following facts are undisputed.

1. Dr. Unkefer incorporates and asserts Defendant St. Vincent Hospital's Statement of Undisputed Material Facts, which is contained in St. Vincent Hospital's Motion for Summary Judgment.

2. "On May 7, 2014, the Santa Fe Fire Department and Police Department responded to a 911 call relating to 17-year-old Desiree Gonzales." *See* Plaintiff's Response to

Defendant St. Vincent Hospital's Motion For Summary Judgment (Doc. 142) (hereinafter Plaintiff Response to SVH SJ"), p. 1, ¶ 1.

3. "Desiree had taken heroin and was given Narcan . . . by the EMTs to counteract the effects of the overdose." "The final Narcan dose was given at 7:44 p.m.". *Id*., p. 2, ¶ 2.

4. "After Desiree was stabilized, she was transported to [St. Vincent Hospital]. Desiree was first seen in the Emergency Department at 8:40 p.m." *Id*. p. 2, ¶ 3.

5. "By the time she reached the Emergency Department at St. Vincent Hospital she was awake and alert." *See* Exh. D, Fisher Report, p. 4.

6. "During the course of her treatment she exhibited signs of opioid withdrawal consistent with the expected effects of naloxone. These signs included tachycardia, anxiety, agitation and vomiting." *Id*.

7. Ms. Gonzales was evaluated by Dr. Unkefer. As an emergency room physician, Dr. Unkefer treats heroin overuse patients on a daily basis, and treats an overdose patient that requires an administration of Narcan at least monthly if not more. Exh. F, Unkefer Depo., 21:20-23.

8. Dr. Unkefer ordered Zofran (an anti-nausea medication) and Ativan (an anti-anxiety medication). Exh. F, Unkefer Depo., 84:12-24.

9. Ms. Gonzales did not exhibit signs and symptoms of respiratory distress while in the emergency department at St. Vincent Hospital. *See* Exh. G, Henry Depo., 54:22-55:1.

10. The effective duration of naloxone/Narcan is 0.5 to 1.5 hours. Exh. D, Fisher Report, p. 5.

11. Plaintiff's emergency medicine expert, Robert Henry, M.D. keeps patients in the emergency room 2-3 hours prior to discharge following administration of naloxone/Narcan. Exh. G, Henry Depo., 93:11-16.

12. According to Dr. Henry, the standard of care for observing patients in the emergency room following a heroin overdose reversed by naloxone/Narcan is two to three hours following naloxone/Narcan administration. *Id.*, 96:1-6.

13. There is medical literature, cited in the report of Dr. Fisher, supporting an observation time, post administration of naloxone/Narcan, of only one hour. Exh. D, Fisher Report, p. 5, n. 25; Exh. I, Clarke, S. Safe discharge of some patients who have taken an overdose of opioids may be possible after one hour.

14. There is medical literature that supports that the observation time post naloxone/Narcan administration does not necessarily require extension if the patient has also taken or been administered other medications that may have a central nervous system affect. *See* Exh. G, Henry Depo., 108:12-112:10.

15. Desiree Gonzales was discharged into police custody at approximately 9:52, over two hours after receiving the final dose of naloxone/Narcan at 7:44. *See* Plaintiff's Response to SVH SJ (Doc. 142), p. 2, ¶¶ 2, 11.

16. The police, who were at the emergency room to take Ms. Gonzales into custody upon her discharge, told Dr. Unkefer that she would be checked on every 15 minutes. Exh. F, Unkefer Depo.*,* 136:4-14.

17. Nurse Ann Marie Munger went through the discharge instructions with Desiree Gonzales, in the presence of the police officer and her mother, and then the written instructions were provided to the police officer to take to the SF YDP. Exh. H, Munger Depo., 86:2-87:15.

18. Dr. Unkefer did not have any further contact with Ms. Gonzales, nor was he contacted by anyone at the YDP regarding events subsequent to her discharge. Exh. F, Unkefer Depo., 150:6-11.

## III. LEGAL STANDARD

### A. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, discovery, and disclosure materials on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Lujan v. Cooper Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 112299, at *2 (D.N.M. June 13, 2008) (citing FED. R. CIV. P. 56(c)). The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *See Id*. An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party. *Id*. Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. *Id*.

### B. CHOICE OF LAW

Plaintiff's state law negligence claims against Dr. Unkefer are before the Court pursuant to the Court's exercise of supplemental jurisdiction under 28 U.S.C. § 1367. A federal court exercising diversity or supplemental subject matter jurisdiction applies the substantive law, including the choice of law rules, of the forum state. *See Lexington Ins. Co. v. Newbern Fabricating, Inc.*, 2015 U.S. Dist. LEXIS 82501, at *15 (N.D. Okla. June 25, 2015) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); and *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999)).

Under New Mexico choice of law, the award of punitive damages is a matter of state law. *Lujan v. Cooper Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 112299, at *3 (D.N.M. June 13, 2008) (citations omitted); *see also Terrazas v. Garland & Loman, Inc.*, 2006-NMCA-111, ¶ 12, 140 N.M. 293 (holding that state common law applied to analysis of medical negligence claims); *Diaz v. Salazar*, 924 F. Supp. 1088, 1100 (D.N.M. 1996) (determining that counterclaims were pendent state tort claims, and, therefore, were governed by New Mexico law.)

## IV.   ARGUMENT

***Plaintiffs' have no evidence demonstrating Dr. Unkefer acted intentionally or with "utter indifference"; therefore, punitive damages must be denied as a matter of law.***

Here, Plaintiff provides no allegations, or any evidence, that would, if proven, support a claim for punitive damages. Plaintiff's allegations and evidence, if true, would prove nothing more than simple negligence on the part of Dr. Unkefer. Indeed, apart from one unsupported legal assertion in her Complaint that Dr. Unkefer's actions were "reckless, wanton or willful," Plaintiff has made no factual allegations or provided any evidence as to any conduct of Dr. Unkefer's that would show that he possessed the required culpable mental state to recover punitive damages.

According to the New Mexico Uniform Jury Instructions, a jury may award punitive damages, if it finds "that the conduct of [Defendant] was [malicious], [willful], [reckless], [wanton], [fraudulent] [or] [in bad faith]."[1] *See* UJI 13-1827 (NMRA); *see also Lujan v. Cooper Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 112299, at *3 (D.N.M. June 13, 2008) (citing New

---

[1] Negligence is not included as a culpable mental state in the Uniform New Mexico jury instruction for punitive damages. *See DeLeon v. Northrop Grumman Sys. Corp.*, No. CIV-02-1379 JC/RLP, 2004 U.S. Dist. LEXIS 27351, at *6 n.1 (D.N.M. July 14, 2004) (noting that the New Mexico Supreme Court has adopted a committee recommendation to exclude gross negligence from the relevant jury instruction); *Todd v. Montoya*, 877 F. Supp. 2d 1048, 1109 (D.N.M. 2012) (same); *See* Comments to 13-1827 NMRA (noting that New Mexico Supreme Court had adopted committee's recommendation to eliminate gross negligence as a basis for an award of punitive damages in contract or tort claim.)

Mexico UJI 13-1827). "Punitive damages are awarded for the limited purposes of punishment and to deter others from the commission of like offenses." *See* UJI 13-1827 (NMRA).

As punitive damages are intended to punish and deter prohibited conduct, they should only be assessed where the conduct at issue "displays a conscious or deliberate disregard of a potential harm." *Lujan v. Cooper Tire & Rubber Co.,* 2008 U.S. Dist. LEXIS 112299, at *3 (D.N.M. June 13, 2008) (citing *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1251 (10th Cir. 2000) (internal quotations and citation omitted)). That is, a defendant must display "a culpable mental state" to support an award of punitive damages. *Id.*; *see also Gonzales v. Sansoy*, 1984-NMCA-133, ¶ 8, 103 N.M. 127 ("As punitive damages are in the nature of punishment, it is necessary that there be some evidence of a culpable mental state, whether recklessness or 'utter indifference.'")

The rules and principles of punitive damages generally are applicable to medical malpractice actions. *Gonzales*, 1984-NMCA-133, ¶ 6. "[M]ere negligence or inadvertence is not sufficient to support an award of punitive damages, the negligence must be aggravated by a mental state such as reckless indifference." *Id*. ¶ 6, 103 N.M. 127 (citing Annot., 27 A.L.R.3d 1274 (1969)).

In *Gonzales*, the evidence showed that the treating physician negligently diagnosed plaintiff. *Id.* On a motion for summary judgment/directed verdict the Court found, however, that there was no suggestion the misdiagnosis was a result of reckless conduct or utter indifference to the patient. *Id*. According to the Court:

> It is undisputed that Dr. Sansoy attended the patient when called on the 17th; that he examined him, had medications administered, ordered and obtained blood tests and screened Mr. Gonzales for pancreatitis. It is undisputed that Dr. Sansoy had a history of the patient's complaints, taken by the nurse. It is further undisputed that the doctor made a diagnosis based upon this history and

>examination, a diagnosis which was consistent with his knowledge of Mr. Gonzales' previous medical problems. Plaintiff cannot and does not dispute that Dr. Sansoy did the things that doctors ordinarily do: examine, test, treat and diagnose; plaintiff's complaint is that he did these things incompletely.

*Gonzales*, 1984-NMCA-133, ¶ 9, 103 N.M. 127

The Uniform Jury Instructions define the culpable mental states as follows:

- Malicious conduct is the intentional doing of a wrongful act with knowledge that the act was wrongful.
- Willful conduct is the intentional doing of an act with knowledge that harm may result.
- Reckless conduct is the intentional doing of an act with utter indifference to the consequences.
- Wanton conduct is the doing of an act with utter indifference to or conscious disregard for a person's rights or safety.

Therefore, Plaintiff must show that Dr. Unkefer acted "intentionally" with knowledge that his treatment would cause injury to Ms. Gonzales, or that that he acted with "utter indifference" or "conscious disregard" as to whether his treatment would cause injury to Ms. Gonzales. This Plaintiff cannot do.

Dr. Henry's expert report stated that Dr. Unkefer's use of the chart for alcohol abuse rather than a heroin overdose was "sloppy" and that his examination of Ms. Gonzales was "cursory." Exh. J, Henry Report, pp. 6-7.  Dr. Henry also opines that Dr. Unkefer's decision to prescribe Ativan was not necessary and outside normal medical standards.  *Id*. at 8.  He also opines that Dr. Unkefer may not have obtained consent for the administration of Ativan, but conceded at his deposition that it would have been appropriate to simply tell Ms. Gonzales they were giving her something to calm her down and does not know whether this was done by Dr. Unkefer.  *Id*. p. 8, Exh. G, Henry Depo., 85:7-86:3. Dr. Henry further opines that Ms. Gonzales should have been observed for a longer period of time, but agrees there is medical literature that is contrary to his opinions.  Exh. J, Henry Report, p. 8; Exh. G, Henry Depo., 108:12-112:10.

9

Dr. Henry did not offer any testimony in either his deposition or his expert report that would suggest that Dr. Unkefer's treatment of Ms. Gonzales was done with the knowledge that the treatment would cause harm to Ms. Gonzales or that Dr. Unkefer's treatment was done with "utter indifference" to whether it would cause her injury. Dr. Henry's testimony would, if accepted, at most, support a claim for simple negligence.

Here, it is undisputed that Dr. Unkefer treated patients with heroin overuses on a daily basis; that he attended Ms. Gonzales in the emergency room; and that he examined Ms. Gonzales and prescribed her medication. It is undisputed that Dr. Unkefer prescribed treatment for Ms. Gonzales based upon the history he had of Ms. Gonzales and his examination; treatment which was consistent with his knowledge of Ms. Gonzales and his treatment of other overdose patients.

As stated by the Court in *Gonzales*, Plaintiff cannot and does not dispute that Dr. Unkefer "did the things that doctors ordinarily do: examine, test, treat and diagnose; plaintiff's complaint is that he did these things incompletely."

The law in New Mexico for punitive damage awards in medical malpractice cases is clear. A physician must show indifference or act maliciously or recklessly toward his patient. There is no evidence that Dr. Unkefer wanted or intended to cause Ms. Gonzales harm. Therefore, Plaintiffs' claims for punitive damages must be denied and summary judgment granted.

## V.   CONCLUSION

Plaintiff has failed to set forth specific facts showing that there is a genuine issue for trial that Dr. Unkefer acted wantonly, willfully, maliciously or recklessly. Therefore, Plaintiffs claim for punitive damages on this ground must be barred as it fails to meet the required legal standard.

Respectfully submitted by:

McCLAUGHERTY & SILVER, PC

By: **"Electronically Filed"**
**/s/ Tamara R. Safarik**
Joe L. McClaugherty
Tamara R. Safarik
PO Box 8680
Santa Fe, New Mexico 87504
(505) 988-8804
(505) 986-9844 facsimile
maclaw@spinn.net
tamara@mcclaughertyandsilver.com
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

We hereby certify that a true and correct copy of the foregoing was electronically served to all counsel of record this **15th** day of **April, 2016** through the Court's Electronic filing system.

**"Electronically Filed"**
**/s/ Tamara R. Safarik**