IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AIMEE BEVAN, as Personal Representative of the
Estate of Desiree Gonzales, deceased,

       Plaintiff,

vs.                                Civ. No. 15-73 KG/SCY

SANTA FE COUNTY, MARK GALLEGOS, Deputy
Warden/Acting Youth Development Administrator, in his
official and individual capacities, GABRIEL VALENCIA,
Youth Development Administrator, individually,
MATTHEW EDMUNDS, Corrections Officer,
individually, JOHN ORTEGA, Corrections Officer,
individually, MOLLY ARCHULETA, Corrections Nurse,
individually, ST. VINCENT HOSPITAL, and NATHAN
PAUL UNKEFER, M.D.,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

       This matter comes before the Court upon Plaintiff's sealed Motion to Amend Complaint

and Substitute Parties (Motion to Amend), filed January 11, 2016.[1]  (Doc. 113).  Plaintiff  moves

under Fed. R. Civ. P. 25(d) to substitute Mark Caldwell, the warden of Santa Fe County

Corrections, in his official capacity, for Defendant Mark Gallegos, the former acting warden of

Santa Fe Corrections, in his official capacity.  Plaintiff further moves under Fed. R. Civ. P. 15(a)

to add the following Defendants:  Renee Fernandez, the acting administrator of the Santa Fe

County Youth Development Program (SF YDP), in her individual capacity, and Esmeralda

---

[1] Plaintiff sealed her Motion to Amend, because it refers to documents that were the subject of a
motion to compel and claimed to be privileged.  (Doc. 113) at 3 n.1.  The Magistrate Judge has
since ruled on the motion to compel finding only the investigation report to be privileged, (Doc.
129) at 7.  Also, the Court does not refer to any sealed or confidential material in this
Memorandum Opinion and Order.  Hence, it is unnecessary to seal this Memorandum Opinion
and Order.

Coronado, an SF YDP corrections officer, in her individual capacity.  Defendants Santa Fe County, Gallegos, Gabriel Valencia, Matthew Edmunds, John Ortega, and Molly Archuleta (collectively, Santa Fe Defendants) filed a response on February 2, 2016, opposing the Motion to Amend.  (Doc. 128).  Defendant St. Vincent Hospital takes no position on the Motion to Amend while Defendant Nathan Unkefer did not respond to the Motion to Amend.  *See* (Doc. 124).  Plaintiff filed a reply on March 1, 2016.  (Doc. 136).  Having considered the Motion to Amend, the proposed amended complaint, and the accompanying briefing, the Court grants the Motion to Amend, in part, in that Plaintiff may file an amended complaint which substitutes Caldwell, in his official capacity, for Gallegos, in his official capacity.

*A.  Background*

    *1.  The Complaint (Doc. 1) at 4-23*

This is a wrongful death lawsuit arising from Desiree Gonzales' allegedly inadequate medical treatment at St. Vincent Hospital for a heroin overdose and allegedly inadequate medical care at the SF YDP where Gonzales was incarcerated after being discharged from St. Vincent Hospital.  Only Count One of the complaint, which addresses Gonzales' care at SF YDP, is relevant to this Memorandum Opinion and Order.  In Count One, Plaintiff alleges deliberate indifference to Gonzales' serious medical needs by the individual Santa Fe Defendants, in their individual capacities, and by Gallegos, in his official capacity as well.  Plaintiff brings Count One under 42 U.S.C. § 1983 for Fourteenth and Eighth Amendment federal constitutional violations, and under the New Mexico Constitution for violating the prohibition against cruel and unusual punishment.[2]  Plaintiff alleges in Count One that the individual Santa Fe Defendants

---

[2] Plaintiff does not present the Court with any authority that the analysis of Gonzales' rights under the New Mexico Constitution would differ from the standard set forth in the analysis of those rights under the United States Constitution. The Court, therefore, analyzes Plaintiff's New

were deliberately indifferent to Gonzales' serious medical needs in the following ways: (1) the individual Santa Fe Defendants disregarded Gonzales' physical condition including her difficulty breathing and "altered mental state;" (2) a "supervisor" ordered Edmunds, a corrections officer, to "cover-up" the inadequate medical care at SF YDP by providing false information to medical providers; and (3) the cover-up also included "records made after the fact for the sole purpose of trying to avoid responsibility for" Gonzales' death. (Doc. 1) at 13, ¶¶ 58-67.

2. *The Proposed Amended Complaint (Doc. 113-1)*

Plaintiff proposes in an amended Count One to substitute Caldwell, in his official capacity, for Gallegos, in his official capacity. Plaintiff would, however, continue to bring Count One against Gallegos, in his individual capacity. Plaintiff also specifically alleges for the first time in an amended Count One that Gallegos personally altered evidence and participated in the cover-up to hide the truth about Gonzales' treatment at SF YDP. (Doc. 113-1) at ¶ 66.

In addition, Plaintiff proposes in an amended Count One to add Fernandez as a Defendant, in her individual capacity. Plaintiff alleges that Fernandez is the supervisor who ordered Edmunds to provide false information to medical providers in an effort to cover-up the inadequate medical care Gonzales received at SF YDP. *Id.* at ¶¶ 75-76. Plaintiff further alleges that Fernandez failed to provide adequate staffing, "to implement appropriate medical screening and monitoring for juvenile inmates," and to ensure adequate training. *Id.* at ¶ 65. Additionally, Plaintiff alleges that Fernandez altered records. *Id.*

Finally, Plaintiff proposes in an amended Count One to add Coronado as a Defendant, in her individual capacity. Plaintiff alleges that Coronado observed that Gonzales was "lethargic

---

Mexico Constitution claims under the federal constitutional analysis. *See Glover v. Gartman*, 899 F. Supp. 2d 1115, 1154 (D.N.M. 2012) (New Mexico courts would probably follow federal analysis of inmate and detainee medical indifference claims).

and slow to respond," "nodding in and out of sleep," as well as weak and unable to sign her name.  *Id.* at ¶¶ 39 and 70.  Plaintiff also alleges that despite these observations, Coronado "took no action to have Gonzales seen by medical staff."  *Id.* at ¶ 39.  Moreover, Plaintiff asserts that Coronado "altered records and participated in the cover up to hide the truth about [Gonzales'] condition at" SF YDP.  *Id.* at ¶ 70.

*B.  Discussion*

The Santa Fe Defendants oppose the Motion to Amend as untimely under Fed. R. Civ. 16(b)(4), because Plaintiff filed the Motion to Amend eight months after the scheduling order's deadline for filing motions to amend the complaint.  *See* (Doc. 24).  Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent."  The Santa Fe Defendants also oppose the Motion to Amend, because it would be futile to add Caldwell, Fernandez, and Coronado as Defendants.

*1.  Rule 16(b)(4):  Timeliness*

When a scheduling order deadline to file motions to amend the complaint has expired, "a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard."  *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (citation omitted).  Rule 16(b)(4) good cause "requires the movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts."  *Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n,* 771 F.3d 1230, 1240 (10th Cir. 2014) (internal quotation marks omitted).  A party may satisfy the good cause requirement by showing, for instance, that the party learned new information through discovery or that the underlying law had changed.  *Id.* Good cause is not shown if the party previously knew the facts upon which a claim depends.  *Id.*  In other words, "[c]arelessness is not compatible with a

finding of diligence and offers no reason for a grant of relief." *Pumpco, Inc. v. Schenker, Intern. Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (quotations omitted). Rule 16(b)(6), however, "does not focus on the bad faith of the movant, or the prejudice to the opposing party." *Colo. Visionary Acad. v. Medronic, Inc.*, 194 F.R.D. 684, 687 (D.Colo. 2000). Although a good cause inquiry will, in most cases, begin with an inquiry into the movant's diligence, there may be other relevant considerations. *See* 6A Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 1522.2 (3d ed. 2015) ("What constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case.").

The Santa Fe Defendants argue that Plaintiff has shown neither diligence nor good cause in attempting to meet the scheduling deadline for filing motions to amend the complaint. The Santa Fe Defendants note that Plaintiff knew in February 2015, when the Santa Fe Defendants answered the complaint, that Gallegos had no supervisory duties at YDP at the time of Gonzales' death. (Doc. 14). The Santa Fe Defendants also note that in July 2015 Plaintiff knew Fernandez was the interim SF YDP administrator and that Coronado processed Gonzales' intake at SF YDP. According to the Santa Fe Defendants, "Plaintiff's counsel discussed these facts with Gabriel Valencia during his deposition on July 23, 2015." (Doc. 128) at 11. Moreover, the Santa Fe Defendants note that Plaintiff actually deposed Coronado in September 2015. *Id.*

Plaintiff explains that she waited to file the Motion to Amend until January 2016, because the proposed amended complaint relies on information which was the subject of an ongoing discovery dispute regarding whether certain documents were privileged. The Magistrate Judge resolved those disputes on February 4, 2016, finding several documents not protected by the work product doctrine. (Doc. 129) at 7. With respect to adding Caldwell as a Defendant, Rule 25(d) states that an "officer's successor is automatically substituted as a party." Consequently,

when a successor officer is "automatically substituted as a party" an extension of the scheduling deadline to file motions to amend the complaint is unnecessary.  Considering the above circumstances, the Court concludes that Plaintiff was diligent in filing the Motion to Amend and has shown good cause to extend the deadline for filing her Motion to Amend.

    *2.  Rule 15(a)(2):  Futility*

Under Rule 15(a)(2), "a party may amend its pleadings only with the opposing party's written consent or the court's leave."  However, Rule 15(a)(2) makes explicit that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In *Foman v. Davis,* the United States Supreme Court analyzed Rule 15(a)(2), stating that "futility of amendment" is a basis for not freely giving leave to amend.  371 U.S. 178, 182 (1962) (quoting Rule 15(a)(2)).  A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a dispositive motion such as a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment.  *Watson v. Beckel,* 242 F.3d 1237, 1239–40 (10th Cir. 2001); *Gohier v. Enright,* 186 F.3d 1216, 1218 (10th Cir. 1999).

Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  *Shero v. City of Grove, Okla.,* 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do."  *Id.* (citation omitted).

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Durham v. Xerox Corp.*, 18 F.3d 836, 838-39 (10th Cir. 1994).

> ### a.  Substituting Caldwell, in his Official Capacity, for Gallegos, in his Official Capacity

The Santa Fe Defendants argue that it would be futile to substitute Caldwell, in his official capacity, for Gallegos, in his official capacity, because the claims against Caldwell are subject to dismissal under Rule 12(b)(6).  However, as noted above, Rule 25(d) provides for an automatic substitution, which has necessarily already taken effect.  *See* Rule 25(d) ("any misnomer not affecting the parties' substantial rights must be disregarded;" absence of order of substitution "does not affect the [automatic] substitution.").  Therefore, the Court allows Plaintiff to amend the complaint to substitute Caldwell, in his official capacity, for Gallegos, in his official capacity.

> ### b.  The Proposed Allegation Against Gallegos, in his Individual Capacity

The Court notes that the amended Count One also includes a new allegation against Gallegos, in his individual capacity, asserting that he was deliberately indifferent to Gonzales' serious medical needs by altering evidence and covering up the truth of what occurred at the SF YDP.  *See* (Doc. 113-1) at ¶ 66.  Prison officials violate a pre-trial detainee or post-conviction inmate's constitutional rights under the Fourteenth and Eighth Amendments, respectively, by

acting deliberately and indifferently to the prisoner's serious medical needs.[3]  *Martinez v. Beggs*,
563 F.3d 1082, 1088 (10th Cir. 2009) (deliberate indifference standard applies to pre-trial
detainees under Fourteenth Amendment); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)
(deliberate indifference standard applies to post-conviction inmates under Eighth Amendment).
The deliberate indifference test has both an objective and subjective component.  *Martinez*, 563
F.3d at 1088.  The objective component examines whether the prisoner's medical need is
sufficiently serious.  *Id.*  Death satisfies the objective component.  *Id.*  The subjective component
answers the question:  "were the symptoms such that a prison employee knew the risk to the
prisoner and chose (recklessly) to disregard it?"  *Id.* at 1089 (quoting *Mata v. Saiz*, 427 F.3d 745,
753 (10th Cir. 2005)).

     Instead of addressing how the above deliberate indifference standard applies to Gallegos,
in his individual capacity, Plaintiff cites *Green v. Branson* for the proposition that "a showing of
deliberate refusal to provide medical attention … coupled with falsification of medical records
may give rise to an Eighth Amendment violation and is cognizable under 42 U.S.C. § 1983."
108 F.3d 1296, 1304 (10th Cir. 1997).  *Green*, however, is distinguishable from this case.  In
*Green*, the treating physician, who allegedly refused to treat the plaintiff, also allegedly falsified
the medical record.  *Id.* at 1303.  In this case, Gallegos was not purportedly involved in
Gonzales' treatment nor does Plaintiff allege that Gallegos knew about Gonzales' symptoms, let
alone the risk of those symptoms to Gonzales, prior to her death.

     Furthermore, Gallegos can only be liable under Section 1983 for his own actions, i.e., his
personal participation in the deprivation of Gonzales' rights.  *See Henry v. Storey*, 658 F.3d

---

[3] Plaintiff does not specify in either the complaint or the proposed amended complaint if she
considered Gonzales a pre-trial detainee or a post-conviction inmate.  In either event, the same
deliberate indifference standard applies.

1235, 1241 (10th Cir. 2011).  Plaintiff has not alleged sufficient facts from which the Court

could reasonably infer that Gallegos personally participated in depriving Gonzales of medical

care.  Plaintiff has simply failed to allege a plausible Section 1983 deliberate indifference claim

against Gallegos.  Without a plausible claim, it would be futile to allow Plaintiff to amend the

complaint to include a personal liability claim against Gallegos.  Accordingly, the Court denies

Plaintiff's request to amend the complaint to bring the Count One claim against Gallegos, in his

individual capacity.

### c.  Adding Fernandez, in her Individual Capacity

The Santa Fe Defendants also argue that adding Fernandez, in her individual capacity,

would be futile, because the Count One deliberate indifference claims against her would be

subject to a Rule 12(b)(6) dismissal.  That deliberate indifference allegedly arose from

Fernandez's supervisory conduct, i.e., providing inadequate staffing, inadequate inmate medical

screening and monitoring, and inadequate or non-existent training; and from her individual

conduct, i.e., her "personal role in the alteration of records."  *Id.* at ¶ 65.

### (1)  Supervisory Liability

Because Section 1983 does not allow liability under a *respondeat superior* theory,

supervisors can be liable under Section 1983 if they promulgated, created, or implemented a

policy that caused the alleged constitutional harm.  *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir.

2015).  In other words, a plaintiff must show an affirmative link between the supervisor and the

alleged constitutional violation.  *Id.*  The affirmative link requirement has "three related prongs:

(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind."  *Id.*

(quoting *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)).  The Tenth Circuit

explains that plaintiffs must "demonstrate 'that each defendant acted with the constitutionally

requisite state of mind' by 'identify[ing] … specific policies over which particular defendants possessed supervisory responsibility[] that violated their clearly established constitutional rights.'" *Id.* at 1249 (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)).  Plaintiff, in this case, has not alleged any facts to show that Fernandez promulgated, created, or implemented "specific" policies which caused a deliberate indifference to Gonzales' medical needs.  Moreover, Plaintiff has not alleged sufficient facts from which the Court can reasonably infer that Fernandez was personally involved in denying Gonzales medical care.

With respect to the failure to train claim, when a supervisor's "failure to train amounts to deliberate indifference to the rights of persons with whom his subordinates come into contact, the inadequacy of training may serve as the basis for § 1983 liability." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1240 (10th Cir. 1999).  To establish a failure to train claim, a plaintiff must show "essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Currier v. Doran,* 242 F.3d 905, 925 (10th Cir. 2001) (internal quotation marks omitted).  Here, Plaintiff provides only a conclusory allegation of "poor or non-existent training."  (Doc. 113-1) at ¶ 65.  Such an allegation is insufficient to establish a plausible failure to train claim.  *See Lemmons v. Clymer,* 609 Fed. Appx. 949, 956-57 (10th Cir. 2015) (conclusory argument "fails to demonstrate a complete failure to train or training that is objectively unreasonable.").  The Court concludes that the supervisory claim, including the failure to train claim, against Fernandez, in her individual capacity, is subject to dismissal under Rule 12(b)(6) and would, therefore, be futile to bring.

### (2)  Individual Liability

Plaintiff supports her proposed individual liability claim against Fernandez for deliberate indifference to Gonzales' medical needs by alleging that Fernandez ordered Edmunds to give

10

medical providers false information to cover-up any misconduct associated with Gonzales' death and that Fernandez altered "records made after the fact…." (Doc. 113-1) at ¶ 77. Like Gallegos, rather than address how the deliberate indifference standard applies to Fernandez, Plaintiff cites *Green* for the proposition that Fernandez's alleged efforts in covering up any misconduct amount to deliberate indifference to Gonzales' serious medical needs. For the same reasons discussed above regarding Gallegos, *Green* does not support a deliberate indifference claim against Fernandez.

Moreover, Fernandez can only be liable under Section 1983 for her own personal participation in the deprivation of Gonzales' rights. *See Henry*, 658 F.3d at 1241. Plaintiff, however, has failed to allege sufficient facts from which the Court could reasonably infer that Fernandez personally participated in depriving Gonzales of medical care. Without such a plausible claim, it would be futile to allow Plaintiff to amend the complaint to include the personal liability claim against Fernandez. For all of the above reasons, the Court denies Plaintiff's request to amend the complaint to add Fernandez, in her individual capacity, as a Defendant in Count One.

### d. Adding Coronado, in her Individual Capacity

The Santa Fe Defendants, although not explicitly, argue that the amended Count One deliberate indifference claims against Coronado are futile, because they would be subject to a summary judgment dismissal under Rule 56.[4] Coronado's undisputed deposition testimony includes the following statements. According to Coronado, when she saw Gonzales during the intake process, Gonzales appeared "really tired." (Doc. 128-2) at 2, depo. at 37. Coronado also

---

[4] The Santa Fe Defendants refer the Court to evidence outside of the proposed amended complaint to argue that the claims against Coronado are futile. Hence, the Court infers that the Santa Fe Defendants believe that the claims against Coronado are subject to dismissal under Rule 56.

observed that Gonzales was "dry heaving." (Doc. 128-3) at 1, depo. at 41. Coronado was, therefore, concerned about Gonzales and asked her supervisor, Valencia, "if he was positive [Gonzales] was okay to be" at SF YDP. *Id.* Valencia responded that Gonzales had been medically cleared. *Id.* at 2, depo. at 42. Coronado further stated that Gonzales did not complete the intake paperwork, including signing forms, because she was "really tired." (Doc. 128-2) at 2, depo. at 37. Coronado later stated to a sheriff's deputy that Gonzales was tired or "out of it," "lethargic and slow to respond," but could "walk, talk and write her name." (Doc. 128-5) at 1-2, depo. at 93-94.

Plaintiff has alleged sufficient facts to demonstrate that Coronado meets the objective component of the deliberate indifference test. With respect to the subjective component, it is undisputed that Coronado was concerned with Gonzales' symptoms: "dry heaving" and tiredness. The Tenth Circuit, however, has indicated that the subjective component requires the prison official to disregard the specific risk of harm claimed by the prisoner, not a more general risk. For example, in *Martinez,* an intoxicated person had been arrested and died after being placed into detention. 563 F.3d at 1086–87. The cause of death was a heart attack due to coronary disease, not intoxication. *Id.* at 1087. The Tenth Circuit held that the plaintiff had to show that the defendants subjectively disregarded the risk of the claimed harm at issue—death and heart attack, not merely the risk of intoxication. *Id.* at 1089-90. The Tenth Circuit further indicated that a general awareness of the potential for harm is not enough; there must be a subjective disregard of a risk of serious harm, i.e., the objective harm actually claimed. *Id.* at 1089 n. 8.

Hence, in this case, Plaintiff would have to allege facts which show Coronado subjectively disregarded the claimed harm, Gonzales' death. The undisputed facts before

Coronado included that Gonzales was very tired and sick to her stomach, but she had been medically cleared to be booked into SF YDP, and she could walk, talk, and sign her name (even if she was too tired to do so).  A reasonable jury could not find that based on these facts Coronado perceived Gonzales to be at risk of death.  Furthermore, a reasonable jury could not find that Coronado recklessly disregarded any risk of harm to Gonzales because she, in fact, asked her supervisor if Gonzales should be booked into SF YDP and he assured her that Gonzales had been medically cleared.  In sum, a reasonable jury could not find that Gonzales' symptoms were such that Coronado knew Gonzales to be at risk of death and that Coronado recklessly chose to disregard that risk.  Consequently, the proposed deliberate indifference claim based on Coronado's interaction with Gonzales would be subject to summary judgment and so would be futile to bring.

Additionally, the deliberate indifference claim based on Coronado's alleged alteration of records would be futile.  As stated above, *Green* stands for the proposition that an Eighth Amendment cause of action may arise where "deliberate refusal to provide medical attention" is "coupled with falsification of medical records…."  108 F.3d at 1304 (emphasis added).  Because a reasonable jury could not find that Coronado was deliberately indifferent to Gonzales' risk of death, the altered records claim alone would not support a deliberate indifference claim.  Accordingly, a deliberate indifference claim against Coronado for altering records would not survive a summary judgment motion.  In sum, the Court denies Plaintiff's request to amend the complaint to add Coronado, in her individual capacity, as a Defendant in Count One.

IT IS ORDERED that

1.  the Motion to Amend Complaint and Substitute Parties (Doc. 113) is granted in part;

2.  Plaintiff has fourteen days from the date of the entry of this Memorandum Opinion and Order to file an amended complaint which substitutes Mark Caldwell, in his official capacity, for Defendant Mark Gallegos, in his official capacity; and

3.  Plaintiff's request to amend the complaint to include Defendant Mark Gallegos, in his individual capacity; Renee Fernandez, in her individual capacity; and Esmeralda Coronado, in her individual capacity, is denied.

UNITED STATES DISTRICT JUDGE

14