IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AIMEE BEVAN, as Personal Representative of
the Estate of Desiree Gonzales, deceased,

        Plaintiff,

vs.                                   Civ. No. 15-73 KG/SCY

SANTA FE COUNTY, MARK CALDWELL,
in his official capacity, MARK GALLEGOS,
in his individual capacity, GABRIEL VALENCIA,
Youth Development Administrator, Individually,
MATTHEW EDMUNDS, Corrections Officer, individually,
JOHN ORTEGA, Corrections Officer, MOLLY ARCHULETA,
Corrections Nurse, Individually, ST. VINCENT HOSPITAL, and
NATHAN PAUL UNKEFER, M.D.,

        Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

       This matter comes before the Court upon Defendant Mark Gallegos' Motion for

Summary Judgment (Motion for Summary Judgment), filed on February 18, 2016. (Doc. 133).

Plaintiff, the personal representative of the estate of Desiree Gonzales, filed a response on March

6, 2016, and Defendant Mark Gallegos (Gallegos) filed a reply on March 21, 2016. (Docs. 138

and 147). Having considered the Motion for Summary Judgment, the accompanying briefs, and

relevant law, the Court grants the Motion for Summary Judgment, and will dismiss, with

prejudice, the claims against Gallegos as well as Defendant Mark Caldwell (Caldwell).

A. *Background*

       1. *Facts Relevant to the Motion for Summary Judgment*[1]

---

[1] Unless otherwise noted, the factual summary reflects the evidence viewed in the light most
favorable to Plaintiff.

This case involves, in part, whether Desiree Gonzales received adequate medical care while incarcerated at the Santa Fe Youth Development Program (YDP).  Prior to Gonzales' incarceration at the YDP, Gonzales had been treated for a heroin overdose and medically cleared for incarceration at the YDP.  It is undisputed that Gonzales experienced respiratory distress while at the YDP and eventually stopped breathing.  *See* St. Vincent Emergency Physician Report (Doc. 145-2) at 1, 3, and 4 (Gonzales "would stop breathing & gasp for air," made "gurgling noises," had "difficulty breathing," complained to her mother of chest pain, and finally stopped breathing altogether).  It is also undisputed that when Gonzales stopped breathing and became nonresponsive YDP staff called 911.  *Id.* at 3-4.  Several hours later, Gonzales died at St. Vincent Hospital.  *Id.* at 4.  The Office of the Medical Investigator determined that the cause of death was "Toxic effects of heroin."  (Doc. 145-4) at 1.

At the time of this incident, Gallegos was the warden of the Santa Fe adult detention facility.  (Doc. 133-1) at 3, depo. at 6.  Gallegos did not oversee the YDP, but had some interactions with the YDP such as cross trainings and networking meetings.  (Doc. 133-2) at 1-2, depo. at 9, 11, and 13.  Gallegos was not involved with any of the policies or procedures at the YDP.  *Id.* at 1, depo. at 11.  Caldwell, on the other hand, oversaw the YDP and supervised Rene Fernandez, the interim YDP director.  *Id.* at 1, depo. at 10-12.  Caldwell was also Gallegos' deputy warden at the adult detention facility.  *Id.* at 1, depo. at 10.

Shortly after Gonzales was taken by ambulance from the YDP to St. Vincent Hospital, the Santa Fe County public safety director, Pablo Sedillo, asked Gallegos to meet him at the YDP to provide assistance and support.  *Id.* at 2, depo. at 13-14.  Gallegos did not know about Gonzales or any of the details surrounding the incident until he went to the YDP on the night of the incident.  *Id.*, depo. at 14.  At the YDP, Sedillo gathered information about the incident while

Gallegos listened and saw where Gonzales had slept.  (Doc. 138-1) at 3-6.  Fernandez then asked Caldwell and Gallegos to review the incident statements written by YDP staff to ensure that they were "clear and concise and correct."  *Id.* at 7, depo. 38-39.

Gallegos observed that the incident statements contained poor penmanship and grammatical errors.  *Id.* at 7, depo. 39-40.  He wrote "Rejected" on incident statements written by Defendants John Ortega and Gabriel Valencia.  (Doc. 138-2) at 1 and 3. Gallegos also wrote on Ortega's incident statement remarks such as "Who What When Where Why How" and "Action Taken."  (Doc. 138-2) at 1.  Additionally, Gallegos wrote on the incident statements submitted by Ortega, Valencia, and Esmeralda Coronado specific questions about the incident such as "What did you do?" "Describe foggy?" "Dressed out by whom?" "What concerns did you have?" and "Did she appear under the influence?" *Id.* at 1, 3, and 5.  Ortega, Valencia, and Coronado responded to Gallegos' comments by submitting amended incident statements.  *Id.* at 2, 4, and 6.  Gallegos did not tell Ortega, Valencia, and Coronado to change any information in the incident statements that could be harmful to Defendant Santa Fe County.  (Doc. 138-1) at 7, depo. at 40.

After Gonzales' death, Sedillo and Gallegos attended a critical incident debriefing. Gallegos spoke generally about following policy and procedures, training, better documentation, and identifying unusual behaviors which require contacting "Medical."  (Doc. 138-4) at 3-4, transcript at 47 and 52.  Sedillo spoke about the need for a protocol for transferring patients from the hospital to the YDP and the need for training.  *Id.* at 2, 5-6, transcript at 46, 65, and 67.

Coronado testified at her deposition that she did not receive training on what to look for when a resident was intoxicated with drugs or how to help such a resident.  (Doc. 138-5) at 2,

depo. at 13.  She also did not receive training on the use of Narcan or naloxone.  *Id.* at 3, depo. at 14.

###### 2. *The Complaint for Wrongful Death (Complaint) (Doc. 1) at 4-19*

Plaintiff originally sued Gallegos in his official and individual capacities. (Doc. 1) at 5, ¶ 8.  Subsequently, pursuant to Fed. R. Civ. P. 25(d),[2] Caldwell, in his official capacity, was automatically substituted for Gallegos, in his official capacity.  (Doc. 197) at 7.  Because the official capacity claims against Caldwell are the same as those previously brought against Gallegos, the Court will address the official capacity claims against Caldwell in the context of this Motion for Summary Judgment.  Of course, the claims against Gallegos, in his individual capacity, still stand.

Pertinent to the claims against Gallegos, in his individual capacity, and now Caldwell, in his official capacity, Plaintiff brings the following claims in Count One of the Complaint:  (1) a 42 U.S.C. § 1983 Fourteenth Amendment due process claim; (2) a Section 1983 Eighth Amendment cruel and unusual punishment claim; and (3) a cruel and unusual punishment claim under the New Mexico Constitution, Article II, Section 13.  Plaintiff alleges in Count One that Gallegos, presumably in his individual capacity, was deliberately indifferent to Gonzales' serious medical needs by inappropriately accepting Gonzales at the YDP and then denying her medical care.  (Doc. 1) at 11 and 13, ¶¶ 54 and 62.  Plaintiff also alleges that the deliberate indifference is "demonstrated by the cover-up that occurred immediately after" Gonzales was found unresponsive at YDP.  *Id.* at 13, ¶ 63.  Plaintiff maintains that "the supervisor" ordered YDP "officers to change their story" to avoid responsibility for Gonzales' death.  *Id.* at 13, ¶ 66.  This cover-up allegedly included the YDP officers "giving false information to medical providers"

---

[2] Rule 25(d) states that a public "officer's successor is automatically substituted as a party."

and falsifying records after Gonzales became unresponsive and died.  *Id.* at 13, ¶¶ 66 and 67.

Plaintiff asserts that the official capacity claims involve the YDP "Acting Warden's" failure to

provide adequate staff, adequate training, and appropriate policies for medical screening and

monitoring of inmates.  *Id.* at 11, ¶ 57.

In Count Two of the Complaint, Plaintiff brings Section 1983 claims against Defendant

Santa Fe County.  In Count Three of the Complaint, Plaintiff brings a New Mexico Tort Claims

Act (NMTCA) negligence and wrongful death claim against Gallegos for failing to provide

Gonzales with adequate medical care and for the manner in which he operated the YDP. [3]  *Id.* at

15, ¶¶ 82 and 83.  It is unclear whether Plaintiff brings Count Three against Gallegos only in his

individual capacity.

Gallegos moves for summary judgment on all claims against him and asserts qualified

immunity as to the Section 1983 individual capacity claims.  Plaintiff opposes the Motion for

Summary Judgment in its entirety.

*B.  Standard of Review*

Summary judgment is appropriate if the moving party shows "there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a). Once the moving party meets its initial burden of demonstrating the absence of a genuine

issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing

that there is a genuine issue for trial.  *See Schneider v. City of Grand Junction Police Dep't*, 717

F.3d 760, 767 (10th Cir. 2013).  A dispute over a material fact is "genuine" only if "the evidence

is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v.

Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)*.*  The Court views the facts in the light most

---

[3] Plaintiff also sued St. Vincent Hospital, one of its physicians as well as YDP staff members. The claims against those Defendants are not at issue in this Motion for Summary Judgment.

favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411(10th Cir. 2014). Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Id.* "This is a heavy burden." *Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203, 1208 (10th Cir. 2017).

At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Estate of Booker*, 745 F.3d at 411. The Court may in its discretion decide which of the two-parts of the qualified immunity test to address first. *Id.* at 412.

"[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). As the Tenth Circuit recently clarified:

> "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, "existing precedent must have placed the statutory or constitutional question 'beyond debate.'" "The dispositive question is 'whether the violative nature of the *particular conduct* is clearly established.'"

*Garcia v. Escalante*, 2017 WL 443610, at *4 (10th Cir.) (quoting *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (citations omitted)). The United States Supreme Court has "emphasized that the clearly-established inquiry 'must be undertaken in light of the specific

6

context of the case, not as a broad general proposition.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. ___, 136 S.Ct. 305, 308 (2015)).  On the other hand, "[t]he law is also clearly established if the conduct is so obviously improper that any reasonable officer would know it was illegal." *Id.* (quoting *Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015)).

*C. Discussion*

　　*1. Count One:  Federal and State Constitutional Claims*

　　　　*a.  Section 1983 Claims:  Fourteenth and Eighth Amendment Violations*

　　　　　　*(1)  Official Capacity Claims Against Caldwell*

As the Court noted above, Caldwell, in his official capacity, has been substituted for Gallegos, in this official capacity.  Notwithstanding this substitution, Gallegos had argued that there was no Section 1983 liability against him in his official capacity, because Plaintiff was already suing Santa Fe County under Section 1983.  Because Gallegos already raised this official capacity issue, the Court will *sua sponte* address this issue as it applies to Caldwell. [4]

---

[4] "After giving notice and a reasonable time to respond, the court may … consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f).  Indeed, a district court may grant summary judgment *sua sponte* "if the losing party was on notice that [he] had to come forward with all of [his] evidence;" and the Tenth Circuit "will still affirm a grant of summary judgment if the losing party suffered no prejudice from the lack of notice." *Johnson v. Weld Cty.*, 594 F.3d 1202, 1214 (10th Cir. 2010) (internal quotation marks and bracket omitted).  Additionally, it is appropriate to *sua sponte* grant summary judgment as to a strictly a legal matter. *See, e.g., Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 224 (3d Cir. 2004) (holding that "exception to the notice requirement in the case of *sua sponte* summary judgment" includes "a decision based on a purely legal issue…."); *Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1201–02 (11th Cir. 2003) (acknowledging that no formal notice is necessary when "legal issue has been fully developed, and the evidentiary record is complete….").  Here, the issue of the official capacity claims against Caldwell is purely legal and does not involve any questions of material facts.  Moreover, Plaintiff had the opportunity, in his response, to offer argument and evidence regarding the redundancy of official capacity claims in this case.  Plaintiff, therefore, suffers no prejudice by the Court's decision to *sua sponte* consider whether to grant summary judgment as to the Section 1983 official capacity claims against Caldwell.

Suing a government official in his official capacity is the same as suing the governmental entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity ...."). When a plaintiff chooses to sue both the governmental entity and government officials in their official capacities, courts routinely dismiss the official capacity claims as redundant. *See, e.g., Buck v. City of Albuquerque*, 549 F.3d 1269, 1275 (10th Cir. 2008) (noting, but not discussing, district court decision to dismiss, as redundant, claims against police captain in his official capacity because plaintiffs asserted same claims against city); *Starrett v. Wadley*, 876 F.2d 808, 813 (10th Cir. 1989) (holding that despite presence of official capacity claim, "the appeal effectively is between only two parties: the County and plaintiff"); *Houston v. Reich*, 932 F.2d 883, 889 (10th Cir. 1991) ("Without the City in the suit, Reich and McHam were being sued only in their individual capacities."); *Jungels v. Pierce*, 825 F.2d 112, 11297 (7th Cir. 1987) (finding that when complaint names both municipality and its official sued only in his official capacity, "there is one defendant—the city—not two…."); *Doe v. Douglas City Sch. Dist.*, 775 F. Supp. 1414, 1416 (D. Colo. 1991) (determining that "redundant" official capacity claim be dismissed)**.**

In light of the above well-established law, the official capacity claims, whether brought against Gallegos or Caldwell, are redundant, confusing, and unnecessary, because they are, in effect, claims against Defendant Santa Fe County. Consequently, the Court will, as a matter of law, grant summary judgment as to Plaintiff's Section 1983 official capacity claims against Caldwell.

### (2) Individual Capacity Claims Against Gallegos

Prison officials violate a pre-trial detainee or post-conviction inmate's constitutional rights under the Fourteenth and Eighth Amendments, respectively, by acting deliberately and

indifferently to a prisoner's serious medical needs.[5]  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (holding that deliberate indifference standard applies to pre-trial detainees under Fourteenth Amendment); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (holding that deliberate indifference standard applies to post-conviction inmates under Eighth Amendment). Plaintiff argues in her response that Gallegos, as a supervisor, and, in his individual capacity, violated the Eighth Amendment by (1) intentionally ordering the alteration of the incident statements after Gonzales' death, (2) failing to adequately train officers, and (3) failing to adopt adequate policies and practices.

*(a) Alteration of Incident Statements*

Plaintiff cites *Green v. Branson* for the proposition that a refusal to provide medical attention "coupled with falsification of medical records may give rise to an Eighth Amendment violation…." 108 F.3d 1296, 1304 (10th Cir. 1997).  *Green*, however, is distinguishable from this case.  In *Green*, the treating physician, who refused to treat the plaintiff, also falsified the medical record created in the course of his contact with the plaintiff.  *Id.* at 1303 (although Green was badly beaten, treating physician refused to treat him and wrote in medical records that he was sending Green to the hospital for examination and x-rays, but, instead, "surreptitiously directed the persons transporting Green to take him for x-rays only and not for an examination.").  Unlike the treating physician in *Green*, it is undisputed, in this case, that Gallegos did not personally deny Gonzales medical care nor did he even know about Gonzales' condition while she was detained at the YDP.  Moreover, the alleged falsification of the incident

---

[5] Plaintiff does not specify in the Complaint if she considered Gonzales a pre-trial detainee or a post-conviction inmate.  Plaintiff, however, only refers to the Eighth Amendment in her response.  Whether Plaintiff's claim is brought under the Fourteenth or Eighth Amendment, the same deliberate indifference standard applies.  For ease of reference, the Court will, like Plaintiff, refer to the Eighth Amendment throughout this discussion.

statements did not involve medical records which could cause injury to an inmate, but rather allegedly involved incident statements written after Gonzales was transported by ambulance from the YDP to St. Vincent Hospital, and, thus, could not have caused harm to Gonzales.

Gallegos notes that he is also entitled to qualified immunity on the federal constitutional claims because Plaintiff has not shown that Gonzales' clearly established right to be free from deliberate indifference to serious medical needs includes a proscription against prison officials from altering records after an inmate dies. Indeed, Plaintiff has not presented the Court with a United States Supreme Court or Tenth Circuit decision on point, nor has she presented authority from other courts which show beyond debate that the particular conduct at issue, i.e., altering records after the death of an inmate, clearly violates the constitutional prohibition against deliberate indifference to serious medical needs. Gallegos, in his individual capacity, is, therefore, entitled to qualified immunity on the Eighth and Fourteenth Amendment claims based on the alleged alteration of the incident statements.

### (b)  Supervisory Claims:  Failure to train and to Adopt Adequate Policies and Practices

To demonstrate Section1983 liability based on a defendant's supervisory role, the plaintiff must show an "affirmative link between the supervisor and the [constitutional] violation," by demonstrating (1) the supervisor's personal involvement, (2) causation, and (3) a culpable state of mind. *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 767 (10th Cir. 2013) (internal quotation marks omitted). With respect to a failure to train claim, when a supervisor's "failure to train amounts to deliberate indifference to the rights of persons with whom his subordinates come into contact, the inadequacy of training may serve as the basis for § 1983 liability." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1240 (10th Cir. 1999). Supervisors can also be liable under Section 1983 if they promulgated, created, or

implemented a policy that caused the alleged constitutional harm.  *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015).  In that situation, a plaintiff must "demonstrate 'that each defendant acted with the constitutionally requisite state of mind' by 'identify[ing] … specific policies over which particular defendants possessed supervisory responsibility[] that violated their clearly established constitutional rights.'"  *Id.* at 1249 (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)).

Here, Plaintiff produces the following evidence to show that Gallegos was a YDP supervisor who failed to train YDP employees:  (1) Coronado testified that YDP training was lacking; (2) Gallegos interacted with the YDP in cross trainings and networking meetings; (3) Gallegos was present at the YDP on the night of the incident; (4) Gallegos wrote comments on the YDP incidents statements; and (5) Sedillo and Gallegos spoke at the critical incident debriefing about the importance and need for training.  The undisputed evidence, however, indicates that Gallegos did not oversee the YDP and was not involved in the YDP's policies and procedures.  Instead, Gallegos was warden of the Santa Fe adult detention facility and did not hear about Gonzales until after she was taken by ambulance to St. Vincent Hospital.  Moreover, the evidence that Sedillo sought Gallegos' support on the night of the incident, Gallegos provided input on the YDP incident statements, and Gallegos made comments at the critical incident debriefing do not create a reasonable inference that Gallegos supervised YDP employees.  Hence, even viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could not find that Gallegos supervised YDP employees, let alone was personally involved in training them.  Consequently, Gallegos is entitled to qualified immunity on the Section 1983 claims based on alleged failure to adequately supervise or train YDP employees.

As to the inadequate policies and practices claim, Plaintiff has not provided any facts to show that Gallegos, who was the warden of the adult facility, promulgated, created, or implemented "specific" YDP policies which caused a deliberate indifference to Gonzales' medical needs while she was at the YDP.  Plaintiff only refers to the critical incident debriefing wherein Sedillo spoke about the lack of protocol regarding the transfer of hospital patients to the YDP.  Viewing the aforementioned evidence in the light most favorable to Plaintiff, a reasonable jury could not find that Gallegos was personally involved in promulgating, creating, or implementing YDP policies that constitutionally harmed Gonzales while she was at the YDP.  Therefore, Gallegos, in his individual capacity, is entitled to qualified immunity and summary judgment on the Section 1983 inadequate policies and practices claim.

*b.  New Mexico Constitutional Claim*

The parties do not specifically address the New Mexico Constitutional claim against Gallegos.  Moreover, it is unclear whether Plaintiff brings this claim against Gallegos only in his individual capacity or whether he intended to bring the claim against Gallegos, now Caldwell, in his official capacity as well.  Nonetheless, the Court finds it appropriate to *sua sponte* address whether to grant summary judgment as to the New Mexico Constitutional claim, because (1) the issue of the viability of an official capacity claim for an alleged violation of the New Mexico Constitution is a purely legal matter, and (2) the issue of whether Plaintiff can bring a New Mexico Constitutional claim that mirrors his Section 1983 claims is also a purely legal matter. *See supra,* fn. 4.

The Court notes first that "[l]awsuits seeking compensation against governmental entities and public employees for the deprivation of rights guaranteed by the New Mexico Constitution are controlled exclusively by the Tort Claims Act…." *Scott v. Dona Ana Cty.*, No. 31,751, 2013

12

WL 4516379, at *3,¶ 13 (N.M. Ct. App.).  A defendant in a NMTCA lawsuit "is the individual, not the office," and a successor cannot be substituted as a defendant.  *Ford v. New Mexico Dep't of Pub. Safety*, 1994-NMCA-154, ¶ 19, 119 N.M. 405.  Consequently, Plaintiff can only bring the New Mexico Constitutional claim against Gallegos, in his individual capacity.  It follows then that Plaintiff cannot bring this claim against Caldwell, in his official capacity.  Hence, to the extent that Plaintiff is bringing the New Mexico Constitutional claim against Caldwell, in his official capacity, that claim is subject to summary judgment as a matter of law.

The Court further recognizes that, in New Mexico, when courts analyze "a state constitutional provision with a federal analogue," courts apply an "interstitial approach."  *Morris v. Brandenburg*, 2016-NMSC-027, ¶ 19, 376 P.3d 836.  Under this approach, courts "first examine whether an asserted [state constitutional] right is protected under an equivalent provision of the United States Constitution."  *Id.*  "If the right is protected, then, under the New Mexico Constitution, the claim is not reached."  *Id.*

In this case, there is a federal analogue to the cruel and unusual punishment provision of Section II, Article 13 of the New Mexico Constitution, i.e., the Eighth and Fourteenth Amendments of the United States Constitution.  In fact, the analysis of Gonzales' rights under the New Mexico Constitution does not differ from the analysis under the Eighth and Fourteenth Amendments.  *See Glover v. Gartman*, 899 F. Supp. 2d 1115, 1154 (D.N.M. 2012) (noting that New Mexico courts would probably follow federal analysis of inmate and detainee medical indifference claims); *State v. Dwyer*, No. 33,234, ¶ 10, 2013 WL 1187656, at *3 (N.M.) ("Article II, Section 13 of the New Mexico Constitution is nearly identical to the Eighth Amendment to the United States Constitution…").  Accordingly, Plaintiff's claim against Gallegos, in his individual capacity, under Section II, Article 13 of the New Mexico Constitutional is redundant

of her claims under the Eighth and Fourteenth Amendments to the United States Constitution and should be dismissed for this reason. *See Kellum v. Bernalillo Cty.,* 2015 WL 12861360, at *4 (D.N.M.) ("Plaintiff's claims under Section II, Article 13 of the New Mexico Constitutional are redundant of her claims under the Eighth Amendment to the United States Constitution" and are subject to dismissal). The Court, therefore, determines that the New Mexico Constitutional claim against Gallegos, in his individual capacity, is, likewise, subject to summary judgment as a matter of law. In sum, Gallegos and Caldwell are entitled to summary judgment on the claims asserted in Count One of the Complaint.

      2. *Count Three: NMTCA Negligence and Wrongful Death Claim*

      Again, it is not clear whether Plaintiff brings this negligence and wrongful death claim against Gallegos only in his individual capacity or whether he also brings this claim against Gallegos, now Caldwell, in his official capacity. The Court will *sua sponte* address the issue of the viability of the official capacity claim under the NMTCA because resolution of that issue is purely a legal matter. *See supra* fn 4.

      As with the New Mexico Constitutional claim, the NMTCA negligence and wrongful death claim can only be brought against Gallegos, in his individual capacity. *See Ford*, 1994-NMCA-154, at ¶ 19 (holding that defendant in NMTCA lawsuit "is the individual, not the office," and successor cannot be substituted as defendant). Consequently, to the extent that Plaintiff is bringing the NMTCA claim against Caldwell, in his official capacity, that claim is subject to summary judgment as a matter of law.

      As to a NMTCA claim against Gallegos, in his individual capacity, the Court notes that the NMTCA is based on "traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." NMSA 1978, § 41–4–2(B) (1996 Repl.

Pamp.).  "Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages."  *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43.  "Foreseeability is a critical and essential component of New Mexico's duty analysis because 'no one is bound to guard against or take measures to avert that which he [or she] would not reasonably anticipate as likely to happen.'"  *Id.* at ¶ 20 (quoting *Bogart v. Hester,* 1959-NMSC-098, 66 N.M. 311, 316).

Plaintiff asserts that Gallegos is liable for negligence and wrongful death under the NMTCA because he breached his duty to provide adequate training to YDP employees and breached his duty to promulgate and implement adequate procedures.  *See Ortiz v. New Mexico State Police*, 1991-NMCA-031, ¶ 14, 112 N.M. 249, *cause dismissed and remanded on other grounds,* 113 N.M. 352 (1992) (concluding that NMTCA "does not bar the claim against supervisory defendants for negligent supervision and training."); *Abalos v. Bernalillo Cty. Dist. Atty's Office*, 1987-NMCA-026, ¶ 29, 105 N.M. 554 (finding that detention center director "had a duty to formulate and implement procedures," and that breach of this duty is actionable under NMTCA).  Plaintiff, however, has not produced any evidence that Gallegos was responsible for training YDP employees or for the YDP's policies and procedures.  To the contrary, it is undisputed that Gallegos did not oversee the YDP and was not involved in the YDP's policies and procedures.  Viewing this evidence in the light most favorable to Plaintiff, a reasonable jury could not find that Gallegos could reasonably foresee that any alleged lack of adequate YDP training or lack of adequate YDP policies and procedures would result in Gonzales not receiving proper medical care.  Moreover, a reasonable jury could not find that Gallegos proximately caused the harm Gonzales suffered when he did not oversee the YDP.  For these reasons,

15

Plaintiff has failed to present evidence that Gallegos' lack of action negligently harmed Gonzales and caused her death.  Gallegos, therefore, is entitled to summary judgment on the NMTCA negligence and wrongful death claim asserted in Count Three of the Complaint.

IT IS ORDERED that

1.  Defendant Mark Gallegos' Motion for Summary (Doc. 133) is granted;

2.  summary judgment will be entered in favor of Gallegos and Caldwell on all of Plaintiff's claims against them; and

3.  those claims will be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE