IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AIMEE BEVAN, as Personal Representative of
the Estate of Desiree Gonzales, deceased,

    Plaintiff,

vs.                                                          Civ. No. 15-73 KG/SCY

SANTA FE COUNTY, GABRIEL VALENCIA,
Youth Development Administrator, Individually,
MATTHEW EDMUNDS, Corrections Officer,
individually, JOHN ORTEGA, Corrections Officer,
MOLLY ARCHULETA, Corrections Nurse,
Individually, ST. VINCENT HOSPITAL, and
NATHAN PAUL UNKEFER, M.D.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Molly Archuleta's Motion for Summary Judgment (Motion for Summary Judgment), filed April 15, 2016. (Doc. 164). Plaintiff filed a response on May 17, 2016, and Defendant Molly Archuleta (Archuleta) filed a reply on June 22, 2016. (Docs. 176 and 204). Having considered the Motion for Summary Judgment, the accompanying briefing, and the relevant evidence, the Court grants the Motion for Summary Judgment, in part, as described below.

*A. Background*

    *1. Facts Relevant to the Motion for Summary Judgment[1]*

This case involves, in part, whether Desiree Gonzales received adequate medical care while incarcerated at the Santa Fe Youth Development Program (YDP). Just prior to Gonzales'

---

[1] Unless otherwise noted, the factual summary reflects the evidence viewed in the light most favorable to Plaintiff.

incarceration at the YDP, Gonzales had been treated for a heroin overdose and medically cleared for incarceration at the YDP. It is undisputed that Gonzales experienced respiratory distress while at the YDP and eventually stopped breathing. *See* St. Vincent Emergency Physician Report (Doc. 145-2) at 1, 3, and 4 (Gonzales "would stop breathing & gasp for air," made "gurgling noises," had "difficulty breathing," complained to her mother of chest pain, and finally stopped breathing altogether). It is also undisputed that when Gonzales stopped breathing and became nonresponsive YDP staff called 911. *Id.* at 3-4. Several hours later, Gonzales died at St. Vincent Hospital. *Id.* at 4. The Office of the Medical Investigator determined that the cause of death was "Toxic effects of heroin." (Doc. 145-4) at 1.

YDP employed Archuleta as a registered nurse. (Doc. 164-1) at 2, depo. at 6. Archuleta was not at the YDP on the night of Gonzales' incarceration because physical nursing coverage had ended for the evening. *Id.* at 3, depo. at 12. No medical personnel were present at the YDP that night.

After Gonzales was booked into the YDP, Defendant Matthew Edmunds (Edmunds), a YDP staff member, called Archuleta. *Id.* at 8, depo. at 60. Edmunds informed Archuleta that Gonzales had been hospitalized at St. Vincent Hospital for a heroin overdose about two hours previously and had been administered Narcan. *Id.* at 12; (Doc. 176-5) at 2, transcript at 36. Edmunds advised Archuleta of Gonzales' "state" which Edmunds described as (1) "not in a

normal state of mind," (2) "groggy" eyed, and (3) having "slurred" speech.[2] (Doc. 142-8). Archuleta later admitted that Edmunds' description of Gonzales' "state" would have been "red flags" to her. (Doc. 176-5) at 3, transcript at 37.

Edmunds further told Archuleta that St. Vincent Hospital medically cleared Gonzales to go to the YDP. (Doc. 164-1) at 12. Edmunds observed that the medical clearance noted "A & O" and asked Archuleta what "A & O" means. *Id.* Archuleta explained that "A & O" means alert and oriented. *Id.* Archuleta then asked Edmunds if Gonzales was alert and oriented. *Id.* He responded, "Yes." *Id.* Archuleta, nonetheless, instructed Edmunds to have Gonzales "sleep in a 'boat' either in the dayroom or in the horseshoe" so that staff could check on her and monitor her breathing. *Id.* Archuleta also told Edmunds to call her if staff had any concerns. *Id.*

About three hours after this call, the YDP administrator called Archuleta to inform her that Gonzales was unresponsive and that 911 had been called. *Id.* By the time Archuleta arrived at the YDP, paramedics were already rendering aid to Gonzales. *Id.* at 13.

Archuleta testified at her deposition that YDP accepts medically cleared juveniles, but will send juveniles to the hospital if they appear to be under the influence of drugs. (Doc. 204-1) at 3, depo. at 42-43. Archuleta was aware that "opiates can cause respiratory depression" and had instructed YDP staff to check for respiratory depression by determining if a resident is breathing. (Doc. 176-2) at 3, depo. at 54-55. Archuleta acknowledged that breathing is

---

[2] Archuleta claims that she did not hear this description of Gonzales' "state." (Doc. 176-5) at 3, transcript at 37. Archuleta also argues that the Court should disregard Edmunds' description of Gonzales, which appears in his incident statement, on the basis of impermissible hearsay. The Court, however, does not plan to consider this description "to prove the truth of the matter asserted in the statement," i.e., that Archuleta was, in fact, not in a normal state of mind, was groggy eyed, and had slurred speech. Fed. R. Evid. 801(c)(2). Rather, the significance of the description "lies solely in the fact that it was made" to Archuleta, whether true or not. *See* Rule 801, Advisory Committee Notes, 1972 Proposed Rules, Note to Subdivision (c) (citation omitted). Hence, Edmunds' description of Gonzales' "state" is not hearsay.

necessary to maintaining life. *Id.* at 4, depo. at 54. She further testified that YDP staff receive first aid and CPR training, but she did not testify that the staff involved with the incident at issue had, in fact, received such training. (Doc. 164-1) at 7, depo. at 45.

In addition to the above factual evidence, both Plaintiff and Archuleta present expert evidence with respect to the constitutional claims addressed in this Motion for Summary Judgment. Expert evidence, however, is not necessary to decide whether summary judgment is appropriate as to those claims. Instead, the claims focus on whether Archuleta had a culpable mind, a subjective inquiry involving whether Archuleta acted with deliberate indifference. *See Powell v. Shah*, 618 F. App'x 292, 296 (7th Cir. 2015) (holding that where "the only issue in this case was whether the doctors had a 'sufficiently culpable state of mind' … the court accurately recognized [it] as a subjective inquiry that did not require an expert….") (citations omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1371 n. 22 (11th Cir.1999) (finding that expert's affidavit does not support finding of deliberate indifference, which is subjective inquiry). Accordingly, the Court does not consider the expert evidence.

*2. The Complaint for Wrongful Death (Complaint) (Doc. 1) at 4-19*

This is a removed lawsuit in which Plaintiff is suing Archuleta in her individual capacity as a nurse. Plaintiff brings the following claims against Archuleta in Count One of the Complaint: (1) a 42 U.S.C. § 1983 Fourteenth Amendment due process claim; (2) a Section 1983 Eighth Amendment cruel and unusual punishment claim; and (3) a cruel and unusual punishment claim under the New Mexico Constitution, Article II, Section 13.

In Count Three of the Complaint, Plaintiff brings a New Mexico Tort Claims Act (NMTCA) negligence and wrongful death claim against Archuleta for failing to provide Gonzales with adequate medical care. (Doc. 1) at 15, ¶ 82. Plaintiff specifies that NMSA 1978,

4

§ 41-4-12 waives immunity from suit under the NMTCA. *Id.* at ¶ 80. Section 41-4-12 provides waiver of immunity "when law enforcement officers cause wrongful death through the deprivation of rights, privileges and immunities secured by the U.S. Constitution or New Mexico Constitution." *Id.*

Archuleta moves for summary judgment on all claims against her and asserts qualified immunity as to the Section 1983 claims. Plaintiff opposes the Motion for Summary Judgment in its entirety.

*B. Standard of Review*

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). A dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411(10th Cir. 2014). Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Id.* "This is a heavy burden."

5

*Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203, 1208 (10th Cir. 2017).

The Court must grant qualified immunity unless the plaintiff demonstrates "(1) that the official violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011)). "[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). As the Tenth Circuit recently clarified:

> "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, "existing precedent must have placed the statutory or constitutional question 'beyond debate.'" "The dispositive question is 'whether the violative nature of the *particular conduct* is clearly established.'" … "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"

*Garcia v. Escalante*, 2017 WL 443610, at *4 (10th Cir.) (quoting *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (citations omitted)). The United States Supreme Court has "emphasized that the clearly-established inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. ___, 136 S.Ct. 305, 308 (2015)). On the other hand, "[t]he law is also clearly established if the conduct is so obviously improper that any reasonable officer would know it was illegal." *Id.* (quoting *Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015)). The Tenth Circuit Court of Appeals further instructs,

> [i]f the plaintiff indeed demonstrates that the official violated a clearly established constitutional or statutory right, then the burden shifts back to the defendant, who must prove that "no genuine issues of material fact" exist and that the defendant "is entitled to judgment as a matter of law." In the end, therefore, the defendant still bears the normal

6

summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense. When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be "properly denied."

*Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citations omitted).

C. Discussion

    *1. Count One: Constitutional Claims*

        *a. Qualified Immunity and Section 1983 Fourteenth and Eighth Amendment Claims*

Prison officials violate a pre-trial detainee or post-conviction inmate's constitutional rights under the Fourteenth and Eighth Amendments, respectively, by acting deliberately and indifferently to a prisoner's serious medical needs.[3] *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (holding that deliberate indifference standard applies to pre-trial detainees under Fourteenth Amendment); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (holding that deliberate indifference standard applies to post-conviction inmates under Eighth Amendment). "Deliberate indifference has both an objective and subjective component." *Id.* To meet the objective component, "[t]he medical need must be sufficiently serious." *Id.* The Court has already determined that Gonzales' respiratory distress and death meet the objective component of Plaintiff's deliberate indifference claim. (Doc. 217). Respiratory distress (or depression) and death are, therefore, Plaintiff's claimed harms to Gonzales. To satisfy the subjective component, Plaintiff must show that Archuleta (1) subjectively knew that Gonzales faced a substantial risk of

---

[3] Plaintiff does not specify in the Complaint if she considered Gonzales a pre-trial detainee or a post-conviction inmate. Archuleta and Plaintiff, however, only refer to the Eighth Amendment in the Motion for Summary Judgment and accompanying briefing. Whether Plaintiff brings the Section 1983 claim under the Fourteenth or Eighth Amendment, the same deliberate indifference standard applies.

7

respiratory distress and death,[4] and (2) disregarded those risks "by failing to take reasonable measures to abate" them. *Hunt*, 199 F.3d at 1224 (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

*(1) Subjective Knowledge of Substantial Risks of Respiratory Distress and Death*

Under the knowledge requirement of the subjective component, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... also draw the inference." *Farmer,* 511 U.S. at 837. A factfinder could find subjective knowledge of a substantial risk of a claimed harm through circumstantial evidence, including the symptoms presented to the official. *Martinez*, 563 F.3d at 1089 (holding that symptoms are relevant to subjective component and factfinder may conclude subjective knowledge of substantial risk by circumstantial evidence). Additionally, protocols provide circumstantial evidence that a medical professional knew of a substantial risk of serious harm. *Mata v. Saiz*, 427 F.3d 745, 757-58 (10th Cir. 2005) (citations omitted) ("While published requirements for health care do not create constitutional rights, such protocols certainly provide circumstantial evidence that a prison health care gatekeeper knew of a substantial risk of serious harm."). In the context of a medical professional, the Court considers the medical professional's "knowledge at the time he prescribed treatment for the symptoms presented, not to the ultimate treatment necessary." *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006).

In this case, viewing the evidence in the light most favorable to Plaintiff, the facts show that at the time Archuleta spoke with Edmunds she subjectively knew that (1) Gonzales was just

---

[4] *See Bruner-McMahon v. Jameson*, 566 Fed. Appx. 628, 633 (10th Cir. 2004) ("risk prison officials ignored must be the risk appellants claimed."); *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (finding that officers did not subjectively know that inmate was at risk of heart attack or death, the inmate's claimed harms).

released from St. Vincent Hospital for a heroin overdose, (2) despite the medical clearance and Gonzales' apparent alertness and orientation, Edmunds described Gonzales as not in a normal state of mind, groggy eyed, and having slurred speech, symptoms which Archuleta recognized as "red flags," (3) a complication from a heroin overdose is respiratory depression and that such a condition can lead to death, and (4) YPD had a protocol to send residents who are under the influence of drugs to the hospital where they can receive proper medical care for drug-related conditions like respiratory depression. From this circumstantial evidence, Archuleta could draw the inference that Gonzales was still under the influence of heroin and that, therefore, a substantial risk of respiratory distress or depression, a life threatening condition existed. The circumstantial evidence further shows that Archuleta, indeed, drew that inference when she requested that staff monitor Gonzales' breathing and to call her if they had any concerns. Hence, Plaintiff has shown that Archuleta subjectively knew that Gonzales faced a substantial risk of respiratory distress or depression, a condition which she subjectively knew could lead to death if not detected and treated.

*(2) Conscious Disregard of Substantial Risks of Respiratory Distress and Death*

Once the plaintiff shows that the defendant subjectively knew of a substantial risk of the claimed harm, the plaintiff must demonstrate that the defendant subjectively or consciously disregarded the claimed harm. *Martinez*, 563 F.3d at 1089 (observing that "defendants must subjectively disregard the risk of Ginn's claimed harm—death and heart attack—and not merely the risks of intoxication."); *Self*, 439 F.3d at 1231 ("person must 'consciously disregard' a substantial risk of serious harm.") (quoting *Farmer*, 511 U.S. at 837, 839). However, a "good faith effort to diagnose and treat" a medical condition does not amount to a conscious disregard of a claimed harm. *Mata*, 427 F.3d at 761. *See also Silverstein v. Fed. Bureau of Prisons*, 559

9

Fed. Appx. 739, 754 (10th Cir. 2014) ("if an official is aware of the potential for harm but takes reasonable efforts to avoid or alleviate that harm, he bears no liability."). "So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Self*, 439 F.3d at 1233. Moreover, "the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor [or medical professional] merely exercises his considered medical judgment" such as deciding "whether to consult a specialist or undertake additional medical testing." *Id.* at 1232.

On the other hand, "[i]f a prison doctor, for example, responds to an obvious risk with treatment that is patently unreasonable, a jury may infer conscious disregard." *Id.* at 1232. "Patently unreasonable" treatment includes not referring a case where the "symptoms obviously required unusual medical skill or ability…." *Id.* at 1235. In determining whether a prison official's conduct was reasonable, courts consider "available alternatives that might have been known to" the prison official. *Howard v. Waide*, 534 F.3d 1227, 1240 (10th Cir. 2008). Ultimately, simple negligence or medical malpractice does not amount to a constitutional violation. *Id.* at 1235 (holding it would be speculation to find culpable state of mind from negligence or medical malpractice).

The question under this part of the subjective component inquiry is whether, under the circumstances, it was "patently unreasonable" for Archuleta to instruct non-medical staff to monitor Gonzales' breathing and call her if they had any concerns, especially since Gonzales was not exhibiting problems breathing at the time she spoke with Edmunds. Archuleta correctly notes that this instruction to staff is consistent with detecting, when or if, respiratory depression should occur. Archuleta also contends that her decision to have non-medical staff monitor

10

Gonzales was reasonable[5] and an exercise of medical judgment, which does not support a constitutional violation.

Although, on its face, it appears that requiring YDP staff to monitor Gonzales' breathing was appropriate, when one views the evidence in the light most favorable to Plaintiff, Archuleta's actions are more than merely negligent or an exercise of medical judgment and are, instead, patently unreasonable or reckless. This recklessness is belied, first, by the fact that Archuleta chose not to examine Gonzales in person despite the "red flags." In addition, responding to a non-breathing resident suffering from respiratory depression would obviously require "unusual medical skill or ability" which the non-medical staff, even if trained in basic first aid and CPR, did not possess, a circumstance Archuleta would have known and which is borne out by the fact that staff found it necessary to call 911 to obtain medical help. Indeed, the protocol for hospitalizing residents under the influence of drugs necessarily recognizes that special hospital care, not available at the YDP, is necessary to care for those residents who may suffer from life threatening conditions like respiratory depression. Furthermore, Archuleta consciously rejected the protocol requiring hospitalization of residents, like Gonzales, who appear to be under the influence of drugs in favor of the protocol allowing a resident to be incarcerated based on a medical clearance, a protocol which ensured that Gonzales received minimal medical care despite a substantial risk of respiratory depression. Finally, having non-medical staff monitor Gonzales' breathing does not constitute a reasonable effort to avoid or eventually treat respiratory depression and, thus, prevent that condition from advancing to

---

[5] Archuleta cites two cases for the proposition that a culpable state of mind is not established even if the medical professional's medical judgment was unreasonable. *See Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000); *Sosebee v. Murphy*, 797 F.2d 179, 181-82 (4th Cir. 1986). Those cases are distinguishable because they deal with misdiagnoses. That is not the case with Archuleta who correctly recognized that opiate use can lead to respiratory depression and failing to breathe at all.

cessation of breathing entirely and, ultimately, death.[6] Considering the above circumstances, Archuleta acted in a patently unreasonable manner. Plaintiff has, therefore, presented sufficient evidence to show that Archuleta consciously disregarded Gonzales' substantial risk of respiratory distress, which she knew could result in death, by leaving Gonzales in the hands of non-medical staff.

For the foregoing reasons, Plaintiff meets the first prong of the qualified immunity analysis by showing that Archuleta was deliberately indifferent to Gonzales' serious medical needs, a violation of the United States Constitution. The second qualified immunity prong inquires whether Gonzales' constitutional right was clearly established at the time of the incident. Although it is generally recognized that "there is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right," more recent case law emphasizes "that the clearly-established inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Garcia*, 2017 WL 443610, at *4 (quoting *Mullenix*, 136 S.Ct. at 308); *Mata*, 427 F.3d at 749. Plaintiff has not cited any federal case law which directly addresses the specific conduct at issue in this case. Nonetheless, the Court determines that Archuleta's conduct was "so obviously improper that any reasonable [nurse] would know it was illegal." *Garcia*, 2017 WL 443610, at *4 (quoting

---

[6]Archuleta cites *Sealock* for the proposition that "[w]hen a medical staff member gives specific direction for additional monitoring of a detainee based on concerns about her medical condition, there can be no showing of deliberate indifference to [the] medical condition as a matter of law." (Doc. 204) at 15; 218 F.3d at 1211. In *Sealock*, a medical professional, who did not know an inmate suffered from chest pain, noted that in the case of unexplained chest pain the standard procedure at the infirmary is to call an ambulance and then monitor the inmate with "an EKG and have that finished for the ambulance and take to the hospital." 218 F.3d at 1211. Unlike the medical professional in *Sealock*, in this case, Archuleta knew respiratory depression could be an issue because she ordered monitoring of Gonzales' breathing. Moreover, the monitoring, here, preceded the calling for an ambulance and was not simply intermediate care while awaiting medical help. *Sealock*, therefore, is distinguishable from this matter.

12

*Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015)).

Consequently, the clearly established prong of the qualified immunity analysis is met. In sum, Plaintiff has carried her burden of demonstrating that Archuleta is not entitled to qualified immunity.

The burden then shifts to Archuleta to demonstrate that no genuine questions of material fact exist as to the constitutional claim. Clearly, however, a genuine question of material fact exists as to exactly what Edmunds told Archuleta about Gonzales' "state." Summary judgment is, therefore, inappropriate on the Section 1983 deliberate indifference claim.[7]

### b. New Mexico Constitutional Claim

The parties do not specifically address the New Mexico Constitutional claim against Archuleta. Nonetheless, the Court finds it appropriate to *sua sponte* address whether to grant summary judgment as to the New Mexico Constitutional claim, because the issue of whether Plaintiff can bring a New Mexico Constitutional claim that mirrors her Section 1983 claims is a purely legal matter.[8]

The Court recognizes that, in New Mexico, when courts analyze "a state constitutional provision with a federal analogue," courts apply an "interstitial approach." *Morris v. Brandenburg*, 2016-NMSC-027, ¶ 19, 376 P.3d 836. Under this approach, courts "first examine

---

[7] The Court notes that the question of whether the deliberate indifference claim is properly brought under the Fourteenth or Eighth Amendment remains unresolved.

[8] "After giving notice and a reasonable time to respond, the court may … consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f). Indeed, courts have held that it is appropriate under Rule 56(f) to *sua sponte* grant summary judgment as to a strictly a legal matter. *See, e.g., Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 224 (3d Cir. 2004) (holding that "exception to the notice requirement in the case of *sua sponte* summary judgment" includes "a decision based on a purely legal issue…."); *Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1201–02 (11th Cir. 2003) (acknowledging that no formal notice is necessary when "legal issue has been fully developed, and the evidentiary record is complete….).

whether an asserted [state constitutional] right is protected under an equivalent provision of the United States Constitution." *Id.* "If the right is protected, then, under the New Mexico Constitution, the claim is not reached." *Id.*

In this case, there is a federal analogue to the cruel and unusual punishment provision of Section II, Article 13 of the New Mexico Constitution, i.e., the Eighth and Fourteenth Amendments of the United States Constitution. In fact, the analysis of Gonzales' rights under the New Mexico Constitution does not differ from the analysis under the Eighth and Fourteenth Amendments. *See Glover v. Gartman*, 899 F. Supp. 2d 1115, 1154 (D.N.M. 2012) (noting that New Mexico courts would probably follow federal analysis of inmate and detainee medical indifference claims); *State v. Dwyer*, No. 33,234, ¶ 10, 2013 WL 1187656, at *3 (N.M.) ("Article II, Section 13 of the New Mexico Constitution is nearly identical to the Eighth Amendment to the United States Constitution…."). Accordingly, Plaintiff's claim against Archuleta under Section II, Article 13 of the New Mexico Constitution is redundant of her claims under the Eighth and Fourteenth Amendments to the United States Constitution. *See Kellum v. Bernalillo Cty.*, 2015 WL 12861360, at *4 (D.N.M.) ("Plaintiff's claims under Section II, Article 13 of the New Mexico Constitutional are redundant of her claims under the Eighth Amendment to the United States Constitution."). Therefore, for that reason, the New Mexico Constitutional claim against Archuleta is subject to summary judgment as a matter of law.

*2. Count Three: NMTCA Negligence and Wrongful Death Claim*

Archuleta contends that Plaintiff has not identified an appropriate waiver of immunity under the NMTCA for any claim of negligence against her. Count Three specifically refers to NMSA 1978, § 41-4-12, which provides that "immunity is waived when law enforcement officers cause wrongful death through the deprivation of rights, privileges and immunities

14

secured by the U.S. Constitution or New Mexico Constitution." (Doc. 1) at 15, ¶ 80. Archuleta argues that this waiver of immunity does not apply to her because she is a registered nurse, not a law enforcement officer. Plaintiff concedes that Archuleta is not a law enforcement officer but cites *Lessen v. City of Albuquerque* for the proposition that Section 41-4-12 provides waiver of immunity when a governmental entity's inadequate medical care deprives a decedent of a constitutional right. (Doc. 176) at 25; 2008-NMCA-085, ¶ 30, 144 N.M. 314. Plaintiff then asserts that "[w]hether this waiver would solely apply to the County, or whether it would also apply to Nurse Archuleta, the person responsible for the care, is a question for this Court." (Doc. 176) at 25.

The Court notes that the New Mexico Court of Appeals in *Lessen* analyzed whether Section 41-4-12 waived immunity for the conduct of officers who the parties did not dispute were "law enforcement officers." *Lessen*, 2008-NMCA-085, at ¶ 32. *Lessen* does not stand for the proposition that Section 41-4-12 provides waiver of immunity for the conduct of non-law enforcement officers like Archuleta who are sued in their individual capacities. Thus, Archuleta is entitled to summary judgment as a matter of law on any NMTCA claim based on Section 41-4-12.

Plaintiff also argues that Section 41-4-6 provides waiver of immunity for Archuleta's participation in the negligent operation or maintenance of a building. Although Count Three does not mention Section 41-4-6, Plaintiff argues that, under New Mexico pleading standards, the Complaint provides sufficient notice to Archuleta of its application to her. Admittedly, Plaintiff alleges in Count Three that "Santa Fe County and Defendant Gallegos were negligent in the manner in which SF YDC was operated," but that allegation does not refer to Archuleta. (Doc. 1) at 15, ¶ 83. Plaintiff contends that since Archuleta was a Santa Fe County employee she

15

was necessarily put on notice that Plaintiff asserts the negligent operation or maintenance of a building claim against her. Plaintiff cites a New Mexico Supreme Court case, *Zamora v. St. Vincent Hosp.*, in support of this contention. 2014-NMSC-035, 335 P.3d 1243.

These arguments in support of Section 41-4-6 waiver of immunity are flawed for two reasons. First, Fed. R. Civ. P. 81(c) specifically states that the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court." Hence, Fed. R. Civ. P. 8 notice pleading standards, not New Mexico notice pleading standards, apply to the Complaint. *See, e.g., Simmerman v. Ace Bayou Corp.*, 304 F.R.D. 516, 519 (E.D. Ky. 2015) ("Rule 8 pleading standards apply to all district court proceedings, including those that originated in state courts.").

Second, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). To meet this notice requirement, a complaint must "list or clearly articulate any causes of action." *Polovino v. Int'l Bhd. of Elec. Workers, AFL-CIO*, 2015 WL 4716543, at *4 (N.D. Okla.), *appeal dismissed* (Dec. 23, 2015) (citing *Mann v. Boatright*, 477 F.3d 1140, 1147-48 (10th Cir. 2007)). The Court is not "obligated to construct a cause of action from allegations in a complaint filed by a party who was unwilling or unable to plead the cause of action himself." *Glenn v. First Nat'l Bank in Grand Junction,* 868 F.2d 368, 372 (10th Cir.1989). "The responsibility for ensuring that one's claims are properly presented lies with the litigant, not the court." *Norton v. The City Of Marietta, OK*, 432 F.3d 1145, 1151 (10th Cir. 2005).

In this case, Plaintiff's allegation of negligent operation or maintenance of a building is explicitly directed to Santa Fe County and Gallegos, not to Archuleta. Consequently, Archuleta

did not have notice Plaintiff was also bringing the negligent operation or maintenance of a building claim against her. It is further outside the Court's purview to expand this cause of action to include Archuleta. If Plaintiff wishes to bring this cause of action against Archuleta, the proper course is to file a motion to amend. *Id.* at 1151-52 ("If plaintiff was concerned that some of his constitutional claims were omitted from the Amended Complaint, the proper course would have been to file a motion to amend ….").

Next, Plaintiff asserts that Archuleta's actions are not subject to immunity under Section 41-4-9 which provides waiver of immunity for the operation of an infirmary or "like facility." In light of the explicit citation to Section 41-4-12 in Count Three, but the failure to specifically cite Section 41-4-9, Count Three simply does not provide sufficient notice to Archuleta of a cause of action based on an operation of an infirmary or like facility. Moreover, the Complaint does not allege that YDP had an infirmary or like facility, or that Archuleta "operated" such a facility. Again, if Plaintiff wishes to bring such a claim, the proper course is to file a motion to amend. In sum, Archuleta is entitled to summary judgment on Count Three of the Complaint.

IT IS ORDERED that

1. Defendant Molly Archuleta's Motion for Summary Judgment (Doc. 164) is granted in part;

2. summary judgment will be granted in favor of Archuleta on the Count One New Mexico Constitutional claim and on Count Three; and

3. those claims will be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE