IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AIMEE BEVAN, as Personal
Representative of the Estate of Desiree
Gonzales, deceased,

    Plaintiff,

vs.                                                               Civ. No. 15-0073 KG/SCY

GABRIEL VALENCIA, Youth Development
Administrator, Individually, MATTHEW EDMUNDS,
Corrections Officer, Individually, JOHN ORTEGA,
Corrections Officer, Individually, MOLLY ARCHULETA,
Corrections Nurse, Individually, ST. VINCENT HOSPITAL, and
NATHAN PAUL UNKEFER, M.D.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff's Motion to Exclude Cheryl Wills (Motion to Exclude), filed on April 1, 2016. (Doc. 155). Plaintiff seeks to exclude Cheryl Wills (Wills), a forensic adolescent psychiatrist, as an expert witness and to strike her "Psychiatric Expert Report" (Report) (Doc. 110-1). (Doc. 155) at 11. Defendant Nathan Paul Unkefer, M.D. (Unkefer) filed a response on April 15, 2016; Defendants Gabriel Valencia, Matthew Edmunds, John Ortega and Molly Archuleta (County Defendants) filed a response on April 29, 2016; and on May 5, 2016, Defendant St. Vincent Hospital (St. Vincent Hospital) joined in the responses filed by County Defendants and Unkefer. (Docs. 162, 170, and 175). County Defendants then

filed a notice of errata on May 5, 2016, that included Wills' Substitute Affidavit.[1] (Doc. 173). Plaintiff filed a reply on May 17, 2016. (Doc. 180).

On April 11, 2018, the Court held a telephonic preliminary hearing to determine whether to hold a *Daubert* hearing on the Motion to Exclude. (Docs. 238 and 239). As a result of that telephonic preliminary hearing, the Court ordered that (1) Plaintiff supplement the record to clarify the damages she is seeking, and (2) County Defendants supplement the record to include where and when Wills had previously testified as an expert. (Doc. 240).

On April 17, 2018, Plaintiff filed a "Notice of Damages Sought for the Estate of Desiree Gonzales" in which Plaintiff specified the following damages:

> 1. The pain and suffering experienced by Desiree Gonzales between the time of injury and death;
> 2. The value of Desiree Gonzales's life apart from her earning capacity, also known as hedonic damages;[2]
> 3. The mitigating or aggravating circumstances attending the wrongful act, neglect or default pursuant to the New Mexico Wrongful Death Act;
> 4. Punitive damages, pursuant to 42 U.S.C. § 1983;
> 5. Attorney fees;
> 6. Costs; and
> 7. Pre- and post-judgment interest.

(Doc. 248) at 1. On that same day, County Defendants filed an "Affidavit of Cheryl D. Wills, M.D." in which Wills attests to providing expert deposition and/or trial testimony in the area of forensic adolescent psychiatry in eight civil cases, beginning in July 2010. (Doc. 247) at 6.

Having considered the Motion to Exclude, the accompanying briefing, the argument of counsel at the April 11, 2018, preliminary hearing, and the supplements filed by Plaintiff and

---

[1] Wills' original affidavit, submitted in support of County Defendants' response, was unsigned. (Doc. 170-1). County Defendants obtained a signed affidavit, which they filed as a Substitute Affidavit. (Doc. 173) at 4-7.

[2] "Hedonic damages" are defined as "[d]amages that attempt to compensate for the loss of the pleasure of being alive." DAMAGES, Black's Law Dictionary (10th ed. 2014).

2

County Defendants, the Court determines that a *Daubert* hearing on the Motion to Exclude is unnecessary and that the Motion to Exclude is granted.

*A. Background*

*1. Wills' "Psychiatric Expert Report"*

Wills bases the Report on her review of Desiree Gonzales' (Gonzales) psychological and medical records, her rehabilitation records, her school records, court-related records, state agency records, and expert reports. (Doc. 110-1) at 1-2. The Report contains a detailed "Case Summary" setting forth a developmental history for Gonzales, including descriptions of various family issues, Gonzales' criminal conduct, and her substance use and abuse. *Id.* at 3-13.

Wills then lays out her various opinions, which she made "with reasonable medical certainty." *Id.* at 14. Wills opined, in essence, that

(1) Gonzales' mother physically and emotionally traumatized Gonzales;

(2) abuse and neglect caused Gonzales' behavior to deteriorate, including problems at school, criminal conduct, and addiction issues;

(3) when Gonzales' problems transitioned from parental neglect to "severe addiction and delinquency," Gonzales' "prognosis, educational potential, employment potential and life expectancy declined significantly;"

(4) Gonzales' biological father "did very little to improve his capacity to deal with [Gonzales'] behavior when it became disruptive;"

(5) if Gonzales' biological father had alerted law enforcement that Gonzales had contacted him, law enforcement could have detained Gonzales on an outstanding warrant before she could overdose on heroin for the last time on May 6, 2014;

(6) Gonzales' biological father profited from Gonzales' death by keeping for himself 37% of the funds raised for Gonzales' funeral and a youth organization; and

(7) had Gonzales lived, "her lifetime earnings potential would have been reduced because" of lack of education, likelihood of future incarceration, lack of responsibility, and addiction to heroin.

*Id.* at 13-17.

### 2. *Wills' Substitute Affidavit*

Wills attests in her Substitute Affidavit that her opinions are "based on training, experience and knowledge that is generally accepted in the medical community." (Doc. 173) at 5, ¶ 3. She further states that her "opinions are based on data ascertained in a line of inquiry that is referred to as a psychological autopsy." *Id.* at ¶ 4. A psychological autopsy considers a decedent's "[d]evelopmental history, medical history, educational history, legal history, family history, social history and any other relevant factors" to investigate "events that preceded his or her death." *Id.* at ¶¶ 4-5. Neither the term "psychological autopsy" nor a description of a psychological autopsy appears in the Report.

Wills further notes that she has "an extensive background in creating and reviewing psychological and medical records such as those listed in [her] report." *Id.* at 6, ¶ 9. Because interpreting psychological and medical records "is likely outside the knowledge of most jurors," Wills attests that her "comprehensive developmental history" of Gonzales would be "helpful to the jury…." *Id.* Wills also attests that her Report and testimony would help a jury understand how Gonzales "would have had a poor prognosis, had she lived." *Id.* at ¶ 10.

*B. Discussion*

Plaintiff seeks to exclude Wills as an expert witness and to strike her Report from the record for two reasons. First, Plaintiff contends that Wills' testimony and Report do not meet the Fed. R. Evid. 702 *Daubert* standard. Second, Plaintiff argues that the Court should exclude Wills' testimony and Report under Fed. R. Evid. 403 because they are more unfairly prejudicial than probative. Defendants oppose the Motion to Exclude in its entirety. Before addressing these substantive arguments, the Court must first decide if it will hold a *Daubert* hearing on the Motion to Exclude.

*1. Whether to Hold a Daubert Hearing*

While courts commonly hold *Daubert* hearings to determine whether to admit expert testimony under Rule 702, such a hearing is not required. *See United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir. 1999) (stating that district court has "great latitude" in "deciding whether to hold a formal hearing"). Having considered the Motion to Exclude, the briefing, the argument of counsel at the April 11, 2018, preliminary hearing, and the supplements submitted by Plaintiff and County Defendants, the Court concludes that it is unnecessary under the circumstances presented here to conduct a *Daubert* hearing on the Motion to Exclude.

*2. Rule 702: Whether Wills' Testimony and Report Meet Rule 702 Daubert Requirements*

Plaintiff argues first that the Court should exclude Wills' testimony and Report under Rule 702 because (1) Wills failed to use a reliable methodology, and (2) her opinions will not be helpful to a jury. Rule 702 allows a qualified expert to testify as to an expert opinion if the expert's "testimony is the product of reliable principles and methods," "the expert has reliably applied the principles and methods to the facts of the case," and the expert's "knowledge will

help the trier of fact to understand the evidence or to determine a fact in issue….." Rule 702 (a) and (c). The parties do not dispute that Wills is a qualified forensic adolescent psychiatrist.

*a. Reliability of Methodology*

*(1) Methodology Described in the Report*

Plaintiff argues first that the Report does not contain any methodology, let alone a reliable methodology. To determine whether an expert's testimony is reliable, the "court must 'assess the reasoning and methodology underlying the expert's opinion ....'" *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006) (citation omitted). Typically, to consider whether a scientific opinion satisfies the reliability requirement under *Daubert* and Rule 702, the Court considers the following nonexclusive factors:

> (1) whether the theory at issue can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and whether there are standards controlling the methodology's operation; and (4) whether the theory has been accepted in the relevant scientific community.

*Id.*

However, in the area of soft science, indicia of reliability can include "professional experience, education, training, and observations" rather than "research, theories and opinions…." *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006). Even so, "[t]he expert must explain the methodologies and principles supporting the opinion." *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010). As a District Judge in Kansas explained,

> Expert opinions may be based on education, training and experience, combined with reliance on reports, depositions or other information related to the particular circumstances, but an expert must explain factually why and how he reached his conclusions. *Hilt v. SFC Inc.,* 170 F.R.D. 182, 185 (D.Kan.1997). The proponent of expert testimony must show "a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation." *Mitchell,* 165 F.3d at 780.

*Mehus v. Emporia State Univ.*, 222 F.R.D. 455, 461 (D. Kan. 2004).

In this case, Wills has demonstrated that she has experience, education, and training as a forensic adolescent psychiatrist. *See* (Doc. 110-11) at 3-15; (Doc. 247) at 1-2. Her "methodology," as revealed in the Report, consisted of first reviewing court-related documents, mental health and rehabilitation records, state agency records, school records, expert reports, and medical reports. Wills then used the information in those documents to compile a chronological developmental history for Gonzales. Finally, Wills laid out her opinions, which she supported with characterizations of the various relationships and events in Gonzales' life. Nowhere in her Report does Wills explain her methodology or its reliability, or how her expertise led to her opinions.

Nonetheless, Defendants cite cases wherein an evaluation of medical records constitutes a reliable methodology. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 762 (3d Cir. 1994) (stating "evaluation of the patient's medical records, like performance of a physical examination, is a reliable method of concluding that a patient is ill even in the absence of a physical examination"); *Richard v. Hinshaw*, 2013 WL 6632122, at *1 (D. Kan.) (finding psychiatrists' review of "medical and other records" was "straightforward" methodology since "they used their essentially unchallenged training and experience to evaluate the facts taken from documents and deposition testimony"); *P.S. ex rel. Nelson v. The Farm, Inc.*, 658 F.Supp. 2d 1281, (D. Kan. 2009) (ruling that forensic psychiatrist who provided report based on review of treatment records could give expert testimony). A review of medical records and even other records may well constitute a reliable methodology if the expert explains in the report how that methodology is reliable. That is not the case here. Instead, Wills attempts to remedy this deficiency in her Report by submitting the Substitute Affidavit. Plaintiff, however, argues that

7

the Court should disregard the Substitute Affidavit because it is both untimely and presents a methodology that does not apply to the facts of this case.

*(2) Methodology Described in the Substitute Affidavit*

*(a) Timeliness of the Substitute Affidavit*

Plaintiff observes that County Defendants filed the Substitute Affidavit after the expert reports deadline of October 2, 2015, expired. *See* (Doc. 66). Plaintiff contends that the Substitute Affidavit and its explanation of Wills' "methodology at this stage of the litigation renders her [Substitute] Affidavit inadmissible." (Doc. 180) at 5. Plaintiff specifically argues that the Substitute Affidavit is in reality an untimely expert report that attempts to cure the Report's deficiencies, i.e., the Report's failure to describe and explain a methodology. Plaintiff cites *In re Cent. European Indus. Dev. Co.* to support her argument. 427 B.R. 149 (Bankr. N.D. Cal. 2009).

The court in *In re Cent. European Indus. Dev. Co.* addressed the question of whether a declaration which tries to cure deficiencies in an initial expert report should be treated as a Fed. R. Civ. P. 26(e)(1) supplement to an initial report or as a subsequent untimely expert report. *Id.* (observing that if declaration is expert report then "filing an undisclosed expert report long after the deadline is an improper attempt to circumvent the expert discovery schedule established by this court"). The court explained,

> If the Declaration is viewed as a "supplement" setting forth information, reasoning and opinions in order to cure that part of her Report's deficiencies, Rule 26 required such things to be disclosed in her critical initial Report. "The purpose of ... supplementary disclosures is just that—... to supplement. These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information."

*Id.*

As another court explained, supplementation under Rule 26(e)(1) "is intended to provide parties an opportunity to correct mistakes and oversights, not to include new examples and illustrations that could have been included in an original expert report." *Eugene Baratto, Textures, LLC v. Brushstrokes Fine Art, Inc.*, 701 F. Supp. 2d 1068, 1071 (W.D. Wis. 2010). A District Judge in Kansas stated,

> A supplemental expert report may be excluded under Rule 37(c) [failure to disclose expert and provide expert report] if it … seeks to strengthen an opinion expressed in the original report. Rule 26(e) may not be used to provide an extension of the expert report deadline or sandbag one's opponent with issues that should have [been] included in the original report.

*Spirit Aerosystems, Inc. v. SPS Techs., LLC,* 2013 WL 6196314, at *7 (D. Kan.).

Having reviewed the Substitute Affidavit, the Court determines that it goes beyond correcting a mistake or oversight, or merely supplements the Report. Instead, the Substitute Affidavit sets forth Wills' methodology and reasoning in an effort to strengthen the Report and cure any deficiencies in the Report. Wills could have stated in the original Report that she was conducting a psychological autopsy and how a psychological autopsy is appropriate in this case. Had that information been included in the Report, Plaintiff could have deposed Wills about the applicability of a psychological autopsy to the facts here. In that respect, the Substitute Affidavit unfairly prejudiced Plaintiff's ability to challenge Wills' purported methodology. For these reasons, the Court will disregard the Substitute Affidavit as an untimely expert report.

### (b) Psychological Autopsy

Assuming that the Substitute Affidavit is a timely supplementation of the Report, Plaintiff, nonetheless, takes issue with Wills' use of a "psychological autopsy" in this case. Plaintiff correctly notes that the cases cited by County Defendants to argue that medical and

9

legal communities accept a psychological autopsy as a valid methodology relating to suicides, which is not the situation here.

For instance, the court in *Shipley v. Forest Labs., Inc.* noted, "This methodology involves a post-mortem risk assessment in which the expert examines the decedent's medical records and the other relevant evidence to 'rule in' and then 'rule out' various factors that may have contributed to the <u>suicide</u>." 2015 WL 4199739, at *6 (D. Utah) (emphasis added). Also, in *Estates of Tobin ex rel. Tobin v. Smithkline Beecham Pharm*, the court observed that "[a] psychological autopsy is a process by which the last days and hours of an individual's life are psychologically analyzed and reconstructed by interviewing persons who interacted with the decedent shortly before his or her death." 2001 WL 36102161, at *8 (D. Wyo.). The court further observed "that a psychological autopsy is accepted in the fields of psychiatry and suicidology, and is the 'most scientifically rigorous' means to determine factors which contributed to a person's completed <u>suicide</u>." *Id.* (emphasis added). A psychological autopsy is not applicable to the facts in this case, therefore the Court does not accept that particular methodology as reliable under the circumstances presented here.

*(3) Conclusion Regarding Reliability*

Although Wills is a qualified forensic adolescent psychiatrist, she fails to explain in her Report the methodology she used or how her expertise as a forensic adolescent psychiatrist makes her opinions reliable. Moreover, Wills' later attempt to provide that explanation in her Substitute Affidavit fails because that affidavit is actually an untimely expert report and the Substitute Affidavit describes a methodology that does not apply to the facts in this case. The Court, therefore, concludes that Wills' testimony and Report fail to meet the reliability

requirement under Rule 702 and *Daubert*, and, for that reason, the Motion to Exclude should be granted.

### b. Helpfulness to the Trier of Fact

Assuming *arguendo* that Wills' testimony and Report meet the reliability requirement under Rule 702, Wills' testimony and Report must also meet the Rule 702 requirement that the testimony "help the trier of fact to understand the evidence or to determine a fact in issue…." Rule 702(a). In fact, "[t]he 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact." *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002). Defendants argue that Wills' testimony will help the jury understand Plaintiff's damages, a contributory negligence defense, and a comparative fault defense. Defendants also argue that Wills' testimony is necessary for impeachment purposes.

#### *(1) Whether Wills' Testimony Will Help the Jury Understand Plaintiff's Damages*

Plaintiff argues that Wills' economic-based opinions are not relevant to the noneconomic damages Plaintiff seeks. Plaintiff further argues that Wills' testimony concerning Gonzales' medical and mental health records is not helpful to a jury on the issue of damages because a jury could, without expert testimony, determine from the evidence "that [Gonzales] and her parents had troubled lives." (Doc. 155) at 7. Defendants assert that Wills' testimony regarding Gonzales' medical and mental health records is relevant to the issue of noneconomic damages and that Wills' testimony will assist a jury by interpreting those technical records.

Indeed, the relevance of an expert's testimony is a factor a court considers in evaluating whether that expert testimony will assist the trier of fact. *Rodriguez-Felix*, 450 F.3d at 1123 (outlining non-exclusive factors for deciding if expert testimony will assist trier of fact including "whether the testimony is relevant..."). The Court agrees with Plaintiff that Wills' testimony

regarding Gonzales' poor economic prospects is not relevant to Plaintiff's noneconomic damages consisting of pain and suffering, the value of Gonzales' life apart from her earning capacity (hedonic damages), and "mitigating or aggravating circumstances attending the wrongful act, neglect or default pursuant to the New Mexico Wrongful Death Act." *See* (Doc. 248) at 1.

County Defendants, on the other hand, assert that Gonzales' medical and mental health background, as summarized and described by Wills, is relevant to noneconomic damages like loss of enjoyment of life, i.e., hedonic damages. In point of fact, this Court has held that a deceased's medical history, including mental health history, as well as past substance and domestic abuse, are relevant to loss of enjoyment of life and value of life damages. *BNSF Ry. Co. v. Lafarge Sw., Inc.*, 2009 WL 9144601, at *1–5 (D.N.M.). Additionally, expert testimony on those subjects assists the jury in understanding the deceased's health, habits, and life expectancy, which "provide[s] the jury a fuller understanding of [the deceased's] life." *Id.* at *5. *See also Bemben v. Hunt*, 1995 WL 27223, at *3 (N.D. Ill.) (finding in 42 U.S.C. § 1983 case that "[e]vidence of Plaintiff's mental and physical condition before, during and after the incident is relevant to the issue of causation of damages."). Accordingly, Gonzales' medical and mental health background is relevant to the noneconomic damages Plaintiff seeks in this case.

Even if expert evidence is relevant to a case, the Tenth Circuit has stated that "[w]hen the normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper." *Wilson*, 303 F.3d at 1219 (quoting *Frase v. Henry,* 444 F.2d 1228, 1231 (10th Cir.1971)). Moreover, expert testimony that is needlessly cumulative of lay witness testimony does not assist the trier of fact and a court, thus, may exclude that testimony for that reason. *See Schwartz v. Caravan Trucking, L.L.C.*, 2011 WL 703925, at *3 (E.D.N.Y. Feb. 17, 2011) (where

expert testimony is "needlessly cumulative of lay witness testimony, the testimony would not assist the trier of fact and may be excluded") (citing *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004)); *Wellman v. Norfolk & W. Ry. Co.*, 98 F. Supp. 2d 919, 925 (S.D. Ohio 2000) ("witness may not give expert opinions which simply verify issues of fact about which lay witnesses will testify[.]").

Here, a jury could properly determine from its own experiences and qualifications, and from the facts and circumstances presented in lay testimony and lay evidence, what life experiences, both positive and negative, Gonzales experienced prior to her death. Accordingly, Wills' testimony regarding medical and mental health records will be cumulative of that lay testimony and lay evidence. Therefore, Wills' testimony will not assist the jury in understanding evidence relevant to hedonic damages or in determining a factual issue concerning hedonic damages.

Defendant Unkefer, however, cites *United States v. Hadley* for the proposition that a child psychiatrist assists the trier of fact by testifying "about general behavior characteristics that may be exhibited in children who have been sexually abused…." 918 F.2d 848, 852 (9th Cir. 1990). In that case, the child psychiatrist's "testimony helped to explain the testimony of the abused children" where the issue of the children's credibility commonly arises. *Id.* at 852-53. Unkefer further cites *Bailey v. Pacheco* in which the court found that expert testimony on the "behavior of abused and neglected children" would assist the trier of fact. Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 308) at 5, Civ. No. 96-959 LH/DJS (D.N.M. 1999). The expert in *Bailey* was expected to testify about the appropriateness of foster parent care of a child with "extensive physical and psychological ailments…." *Id.* at 2-3. The

Court finds these two cases factually distinct from this one and, therefore, of little or no persuasive value to the case at hand.

Finally, Wills' testimony associated with the actions by Gonzales' biological father just prior and after Gonzales' death are not relevant to any damages Gonzales suffered at the hands of Defendants. In addition, the opinions based on the actions of Gonzales' biological father do not rely on the interpretation of any specialized information. Wills' testimony as to those actions will not assist the jury in any way.

*(2) Whether Wills' Testimony Will Help the Jury Understand a Contributory Negligence Defense*

County Defendants further argue that Gonzales' developmental history is relevant to the issue of contributory negligence by Gonzales. (Doc. 170) at 15 ("These background facts directly relate to her contributory negligence and her activities on the day in question…."). Contributory negligence is not an available defense in the Section 1983 context. *See, e.g., Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 875 (6th Cir. 1982) (In discussing Section 1983 action, Sixth Circuit stated, "Contributory negligence has never been a defense to intentional tortious conduct."); *Creamer v. Rooks Cty., Kan.*, 2013 WL 5406429, at *2 (D. Kan.) (noting that claim of contributory negligence is inappropriate in Section 1983 context because "[n]egligence … does not suffice to support a § 1983 claim"). Also, "[i]n New Mexico, the common law doctrines of contributory negligence and joint and several liability have been replaced with a system of pure comparative negligence and, with respect to concurrent tortfeasors, several liability." *Lewis ex rel. Lewis v. Samson*, 2001-NMSC-035, ¶ 32, 131 N.M. 317. Gonzales' developmental history, therefore, is not relevant to any contributory negligence defense and will not assist the jury in that respect.

### (3) Whether Wills' Testimony Will Help the Jury Understand a Comparative Fault Defense

Plaintiff argues that any attempt to use Wills' testimony to make a comparative fault determination based upon the conduct of Gonzales' parents and Gonzales herself, is unfounded. To begin with, it is well-established that comparative fault does not apply in the Section 1983 context. *Quezada v. Cty. of Bernalillo*, 944 F.2d 710, 721 (10th Cir. 1991). Thus, comparative fault would not apply with respect to the Section 1983 claims against County Defendants.

Nonetheless, County Defendants contend that they, St. Vincent's Hospital, and Unkefer "have all raised comparative negligence defenses that are still in play" with respect to the state negligence claims against Unkefer and St. Vincent Hospital. (Doc. 170) at 15. In that context, County Defendants assert that Wills' testimony is relevant to any comparative negligence as between Defendants, Gonzales, and her parents. County Defendants, however, do not cite any legal authority to support this assertion. Plaintiff, on the other hand, contends that any comparative negligence should apply between Defendants, and not include Gonzales or her parents.

With respect to including Gonzales in a comparative fault analysis, cases show that "[p]re-treatment fault of the patient that caused the injury or condition treated by the physician, is logically irrelevant. The physician undertakes to treat the plaintiff as she is." Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, *The Law of Torts* § 314 (2d ed.). The Tenth Circuit also acknowledged the "basic" tenet

> that a professional holding himself out to serve clients or patients is liable for his negligent performance of duties undertaken and may not be relieved of such liability by his clients' or patients' actions in causing or getting involved in the very conditions which the professional was employed and undertook to treat or remedy. Otherwise the professional would not be held responsible for performing the very duties he assumed.

15

*Steiner Corp. v. Johnson & Higgins of California*, 135 F.3d 684, 688 (10th Cir.), *as amended on denial of reh'g* (10th Cir. 1998). The Tenth Circuit further acknowledged that this tenet applies to physicians. *Id.* n. 2 (citing *Jensen v. Archbishop Bergan Mercy Hospital,* 236 Neb. 1, 459 N.W.2d 178 (1990); *Cheek v. Domingo,* 628 F.Supp. 149, 151–52 (D.Vi.1986); *Ostrowski v. Azzara,* 111 N.J. 429, 545 A.2d 148, 155–56 (1988); and *Sendejar v. Alice Physicians & Surgeons Hospital,* 555 S.W.2d 879, 885 (Tex.Civ.App.1977, writ ref'd n.r.e.)). Consequently, any testimony by Wills regarding Gonzales' fault in causing her drug overdose is not relevant to a comparative negligence analysis and, thus, of no assistance to a jury in that regard.

Regarding Gonzales' parents, County Defendants seem to suggest that the parents are original or initial tortfeasors, i.e., that their negligent actions (as described by Wills) caused Gonzales to overdose, while Defendants are alleged successive tortfeasors whose actions purportedly enhanced the original injury, the overdose. "In an enhanced injury case, a jury does not compare the negligence of the tortfeasors for the enhanced injury, but the plaintiff must still prove that the physician's negligence proximately caused an enhancement of the initial harm suffered at the hands of the original tortfeasor." *Lewis ex rel. Lewis v. Samson*, 2001-NMSC-035, ¶ 35, 131 N.M. 317. "[A] physician accused of subsequent medical negligence may rebut the plaintiff's evidence of causation through evidence of the initial tortfeasor's responsibility for the entire harm." *Id.* at ¶ 37. Accordingly, Wills' description of the actions of Gonzales' parents is not relevant to a comparative negligence analysis, but Wills' description of those actions is relevant to the causation issue. Even so, as the Court noted above, a jury, relying on its experiences and qualifications, does not need the assistance of an expert, like Wills, to consider lay testimony and lay evidence regarding Gonzales' life experiences, including the actions of her parents. Such expert testimony will only be cumulative of that lay testimony and lay evidence.

16

Hence, Wills' testimony will not help the jury to understand a comparative fault defense or causation issues.

*(4) Whether Wills' Testimony is Necessary for Impeachment Purposes*

County Defendants also contend that Wills' testimony is necessary for possible impeachment purposes. Specifically, County Defendants assert that "Wills' testimony may also be offered for purposes of impeachment to the extent the plaintiff attempts to introduce testimony contrary to the facts and conditions reflected in Ms. Gonzales's various developmental records." (Doc. 170) at 3. Plaintiff argues, on the other hand, that "third-hand knowledge cannot be used to impeach witnesses…." (Doc. 180) at 7 n.2. "[A] 'third party's characterization' of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization." *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) (citation omitted). Moreover, Fed. R. Evid. 613 (prior inconsistent statements) does not apply to evidence of inconsistent conduct. Advisory Committee Note, Rule 613. Rule 613 only applies to prior inconsistent "statements." Considering these limitations on a third-party's ability to present prior inconsistent statements or conduct, and the availability of developmental records relied on by Wills, Wills' testimony is not necessary for the potential impeachment purposes County Defendants describe.

*(5) Conclusion Regarding Helpfulness to the Jury*

Wills' opinions on economic damages are not relevant to the noneconomic damages Plaintiff seeks nor are the opinions relevant to any contributory negligence or comparative fault defenses. While Wills' testimony may be relevant to Plaintiff's noneconomic damages and to causation, Wills' testimony, nonetheless, will not be helpful to the jury. A jury can rely on its own experiences and qualifications as well as lay testimony and lay evidence to understand how

Gonzales' life events, including her parents' actions, relate to damages and causation. Additionally, Defendants have not convinced the Court that Wills' testimony provides the sole evidence available for potential impeachment purposes. Since "[t]he 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact," the lack of helpfulness here mandates that the Court grant the Motion to Exclude under Rule 702. *Wilson*, 303 F.3d at 1219.

*3. Rule 403: Whether Wills' Testimony Would be More Unfairly Prejudicial than Probative*

Plaintiff further argues that the Court should exclude Wills' testimony and Report under Rule 403. Rule 403 allows a court to "exclude evidence if its probative value is substantially outweighed by a danger of … unfair prejudice…." The Tenth Circuit has described "Unfair prejudice," as used in Rule 403, in various ways. The Tenth Circuit stated in *Phillips v. Hillcrest Medical Center* that

> ordinary prejudice alone is insufficient to exclude relevant evidence. The prejudice must be unfair, such that we may conclude the jurors made their decision based not upon the evidence presented but upon their confusion, passion, or emotion.

244 F.3d 790, 800 (10th Cir. 2001). Additionally, "a trial court should consider '[t]he availability of other means of proof' as an appropriate factor reaching a conclusion whether to exclude evidence based on unfair prejudice." *Stump v. Gates*, 211 F.3d 527, 538 (10th Cir. 2000). Other considerations include that the excluded evidence was highly probative, the "evidence was very limited in the context of the whole trial, and introduction of the evidence was followed by the trial court's limiting instruction to the jury." *United States v. Record*, 873 F.2d 1363, 1375–76 (10th Cir. 1989).

Moreover, exclusion of evidence under Rule 403 "is an extraordinary remedy and should be used sparingly." *United States v. Smalls*, 605 F.3d 765, 787 (10th Cir. 2010). In fact, "[i]n

18

performing the 403 balancing, the court should 'give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.'" *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000) (citation omitted).

Having reviewed Wills' Report, the Court determines that although Rule 403 is an extraordinary remedy, and a limiting jury instruction could be given, Wills' testimony, to the extent it is probative, is unfairly prejudicial. Her testimony about Gonzales' very troubled upbringing, which includes much more than mere drug use, could easily influence a jury's decision on the basis of passion or emotion. The Court has no doubt that admissible, probative evidence is available to provide the jury with an overall sense of Gonzales' life. Additionally, considering the extensive developmental history described in the Report, Wills' testimony would probably not be "very limited in the context of the whole trial…." *Record*, 873 F.2d at 1375. For all of these reasons, the Court also concludes that Wills' testimony and Report should be excluded under Rule 403 as being more unfairly prejudicial than probative.

IT IS ORDERED that

1. Plaintiff's Motion to Exclude Cheryl Wills (Doc. 155) is granted;

2. Wills is not allowed to testify as an expert at the trial in this matter; and

3. Wills' Report (Doc. 110-1) is stricken from the docket sheet.

_____
UNITED STATES DISTRICT JUDGE