IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AIMEE BEVAN, as Personal Representative
of the Estate of Desiree Gonzales, deceased,

    Plaintiff,

    vs.                                                Civ. No. 15-0073 KG/SCY

GABRIEL VALENCIA, Youth Development
Admin., Individually; MATTHEW EDMUNDS,
Corrections Officer, Individually; JOHN
ORTEGA, Corrections Officer, Individually;
MOLLY ARCHULETA, Corrections Nurse,
Individually; and NATHAN PAUL DEFENDANT UNKEFER, M.D.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon (a) Nathan Defendant Unkefer, M.D.'s Motion *in Limine* to Bar Testimony and Evidence Related to Hospital Policies, Procedures and Guidelines (Doc. 258), filed July 10, 2018; (b) Defendant St. Vincent Hospital's Motion *in Limine* to Exclude Evidence of Policies of Other Institutions (Doc. 263), filed July 10, 2018, which Defendant Unkefer joins in (Doc. 285)[1]; and (c) Defendant St. Vincent Hospital's Motion *in Limine* to Exclude Evidence of Subsequent Remedial Measures (Doc. 265), filed July 10, 2018, which Defendant Unkefer joins in (Doc. 285). Plaintiff filed responses to these motions on August 2, 2018. (Docs. 297, 298, and 299). Having considered the motions and responses, the Court grants the motions in limine.

---

[1] Although St. Vincent Hospital is no longer in the case, other Defendants have joined in St. Vincent's motions in limine. (Doc. 290). As such, those motions are still viable and the Court, therefore, will address them.

*A. The Motions in Limine*

Defendant Unkefer moves to exclude evidence, testimony, and argument related to hospital policies, procedures and guidelines under Fed. R. Evid. 401, 402, and 403. Plaintiff's expert, Dr. Robert Henry, testified at his deposition about policies in place at Presbyterian Hospital in Albuquerque. Dr. Henry, who works at Presbyterian Hospital, testified at his deposition that in his opinion St. Vincent Hospital was negligent because it did not have a policy, like the one Presbyterian Hospital has, regarding heroin overdoses and reversals. (Doc. 263-1) at 2. According to Dr. Henry, such a policy would have likely kept the decedent, Desiree Gonzales, at St. Vincent Hospital longer. *Id.* Dr. Henry agreed, however, that even with that policy a physician using "his own independent medical judgment" could have discharged a patient as Defendant Unkefer did here. *Id.*

Defendant Unkefer argues that hospital policies, procedures, and guidelines are not relevant to the issue of the care he provided Gonzales. Defendant Unkefer also notes that St. Vincent Hospital did not have any policies in place at the time of the incident which would relate to this case.

St. Vincent Hospital, likewise, moves to exclude evidence of policies of other institutions. Although Dr. Henry produced the Presbyterian Hospital policy or protocol at this deposition, Ex. 87, St. Vincent Hospital states that Plaintiff did not produce the protocol prior to Dr. Henry's deposition; Plaintiff did not produce the Presbyterian Hospital protocol as a supplement to discovery responses; and the proposed pretrial order does not refer to the protocol. For these reasons alone, St. Vincent Hospital seeks to exclude evidence of the protocol.

Next, like Defendant Unkefer, St. Vincent Hospital argues that evidence of the Presbyterian Hospital protocol to establish that St. Vincent Hospital should have had such a protocol is not relevant to whether Defendant Unkefer met the applicable standard of care.

St. Vincent Hospital further argues that evidence of the protocol would be confusing to a jury and so should be excluded under Rule 403. Specifically, St. Vincent Hospital argues that the jury would be "confused about how the Presbyterian protocol factors into the applicable standard of care and whether Dr. Unkefer's decision to discharge … Gonzales actually departed from the protocol…." (Doc. 263) at 3. In other words, Defendant Unkefer could have still used his medical judgment under the protocol to discharge Gonzales when he did.

Finally, St. Vincent Hospital moves to exclude any evidence of subsequent remedial measures, including revisions or additions to hospital policies and procedures. Here, Registered Nurse Anne Marie Munger testified at her deposition that St. Vincent Hospital later instituted a post-Narcan treatment protocol which requires that prior to discharge patients be monitored for two hours, have a room air oxygen saturation level above 90 for 30 minutes, and be alert and oriented times four. (Doc. 265-1) at 2, depo. at 30-31. At the time of the incident at issue, there was no protocol for post-Narcan treatment. *Id.* at depo. 31. Nurse Munger further testified that, in this case, Gonzales was discharged after having a room air oxygen saturation level above 90 for 30 minutes. *Id.* at depo. 32.

St. Vincent Hospital notes that evidence of subsequent remedial measures is inadmissible under Fed. R. Evid. 407, which states, in part,

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> - negligence;
> - culpable conduct ….

3

St. Vincent Hospital also argues that subsequent remedial measures are not relevant. St. Vincent Hospital notes that "simply because a process can be made even safer does not mean that the original process fell below the standard of care." (Doc. 265) at 4.

St. Vincent Hospital further argues that references to subsequent remedial measures should be excluded under Rule 403. St. Vincent believes those references "would likely leave a false impression" that Defendant Unkefer's treatment of Gonzales fell below the standard of care. *Id.* Moreover, the references would contradict the purpose of Rule 407. *See* Advisory Committee Notes, 1972 Proposed Rules ("exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety.").

*B. Plaintiff's Responses to the Motions in Limine*

Plaintiff argues that evidence of other facilities' policies and procedures is relevant to the reasonable standard of care for emergency room (ER) physicians. According to Plaintiff, evidence of policies and procedures will contradict Defendant Unkefer's expert who will testify that Defendant Unkefer acted as a reasonable ER physician.

Plaintiff argues specifically that industry standards are relevant to the standard of care for medical providers. Plaintiff cites *Pharmaseal Labs., Inc. v. Goffe*, 1977-NMSC-071, ¶ 15, 90 N.M. 753:

> Evidence of the standard of knowledge, skill and care owed by a physician to his patient can be provided by expert testimony of the knowledge, skill and care ordinarily used by reasonably well-qualified doctors of the same field of medicine practicing under similar circumstances, and this <u>includes testimony from doctors from the same or other localities</u>.

Emphasis added. Plaintiff argues that under *Pharmaseal Labs., Inc.* policies and procedures in hospitals, like Presbyterian Hospital, while "not definitive proof of a violation of the standard of care," are relevant as to what is and must be considered along with expert testimony.

4

Specifically, Plaintiff argues that her expert, Dr. Henry, will testify as to the standard of care for an ER doctor practicing under similar circumstances in Santa Fe "or other localities." According to Plaintiff, "[p]art of the foundation for Dr. Henry's testimony is the policies and procedures of surrounding hospitals, including Presbyterian Hospital." (Doc. 297) at 3.

Plaintiff further cites *Richter v. Presbyterian Healthcare Servs.* which involved a medical lab that failed to deliver test results to a patient and her doctors. 2014-NMCA-056, 326 P.3d 50. In that case, the New Mexico Court of Appeals held that "the timing of the delivery of laboratory reports will normally require expert testimony, except when the required timing is set by a known standard such as internal policy, contract, or governmental regulation." *Id.* at ¶ 28. The New Mexico Court of Appeals, however, applied that proposition to a suit against a medical lab and not to a medical malpractice suit against a medical provider, which is the case here.

Plaintiff also cites other cases which have held that policies and procedures are relevant to the standard of care inquiry. Those cases, however, are not on point.

1. *Heastie v. Roberts*, 226 Ill. 2d 515, 553–54, 877 N.E.2d 1064, 1088 (2007) (in addressing standard of care of a hospital, court held that "While such policies are not determinative of the standard of care, the failure of a hospital to follow its policies can be evidence of a breach of the hospital's duty to a patient."). *Heastie* did not apply that proposition to a direct malpractice claim against a health care provider.

2. *Treaster v. HealthSouth Corp.*, 442 F. Supp. 2d 1171, 1188–89 (D. Kan. 2006) (in vicarious liability suit against hospital, the court held that "plaintiff has failed to direct the court's attention to any expert evidence linking [failure to chart] to a violation of the hospital's policies and procedures."). The court also did not apply the above proposition to a direct malpractice claim against a health care provider.

3. *DiLieto v. Cty. Obstetrics & Gynecology Grp., P.C.*, 297 Conn. 105, 137, 998 A.2d 730, 751 (2010), *abrogated on other grounds by Fairfield Merrittview Ltd. P'ship v. City of Norwalk*, 320 Conn. 535, 133 A.3d 140 (2016) (in action against hospital, defendants quoted *Petriello v. Kalman,* 215 Conn. 377, 576 A.2d 474 (1990), in which court "stated that, '[a]lthough a violation of an employer's work rules can be viewed as evidence of negligence, such a violation does not establish the applicable duty of the hospital to its patients, since hospital rules, regulations and policies do not themselves establish the standard of care.'"). Likewise, the court in *DiLieto* did not apply that proposition to a direct malpractice claim against a health care provider.

4. *McCorkle v. Gravois*, 152 So. 3d 944, 951 (La. App. 2015), *writ denied,* 153 So. 3d 446 (in physician malpractice lawsuit, court found that drug instructions in drug package inserts and the Physician's Desk Reference "have been used in medical malpractice cases *in conjunction with expert medical testimony* to establish the applicable standard of care and breach thereof."). *McCorkle* does not involve hospital policies and standards.

*D. Discussion*

Plaintiff's cases do not directly address the issue of whether hospital policies and procedures are evidence of a doctor's standard of care. Even if one could argue that evidence of policies and procedures could be relevant to a standard of care in a locality, here the policy discussed by Dr. Henry provides an element of medical judgment. Consequently, it would be confusing to a jury to have a protocol that allows for medical judgment as a standard of care when Plaintiff argues that Defendant Unkefer breached that standard of care although he used his medical judgment to discharge Gonzales. Under that scenario, evidence of Presbyterian Hospital's policy is inadmissible under Rule 403. Also, evidence of the institution of policies

and procedures after Gonzales' death is inadmissible under Rule 407 to prove negligence or culpable conduct by Defendant Unkefer.

IT IS ORDERED that

1. Nathan Defendant Unkefer, M.D.'s Motion *in Limine* to Bar Testimony and Evidence Related to Hospital Policies, Procedures and Guidelines (Doc. 258) is granted;

2. Defendant St. Vincent Hospital's Motion *in Limine* to Exclude Evidence of Policies of Other Institutions (Doc. 263) is granted; and

3. Defendant St. Vincent Hospital's Motion *in Limine* to Exclude Evidence of Subsequent Remedial Measures (Doc. 265) is granted.

_____
UNITED STATES DISTRICT JUDGE